712 A.2d 69

**BERETTA U.S.A. CORP.**

v.

**Peter SANTOS.**

**No. 1024, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

June 25, 1998.

170

Jerrold A. Thrope (Gordon, Feinblatt, Rothman, Hoffberger & Hollander, L.L.C., on the brief), Baltimore, for appellant.

Michael L. Hecht (Surell Brady, Gregory G. Hopper, Baltimore, and Maurene Epps Webb, Acting Deputy County Attorney, Shalisha Ivy, Asst. County Attorney, Upper Marlboro, on the brief), for appellee.

Argued before HOLLANDER, THIEME and KENNEY, JJ.

HOLLANDER, Judge.

Beretta U.S.A. Corp. ("Beretta"), appellant, appeals from an order of the Circuit Court for Prince George's County affirming a decision of the Prince George's County Human Relations Commission (the "Commission"). The Commission found that appellant illegally discharged Peter Santos, appellee,[1] in retaliation for a complaint filed with the Commission by Mr. Santos, in which Mr. Santos claimed that Beretta had discriminated against him. The Commission ordered Beretta to cease and desist from such conduct and awarded appellee $37,690.80 in lost wages and $20,000.00 in damages for embarrassment and humiliation. Beretta presents the following questions for review, which we have rephrased and reordered:

I. Was the Commission's finding of retaliation supported by substantial evidence?

II. Did the Commission err in awarding damages for humiliation and embarrassment?

---

1. We observe that, in the Notice of Appeal, appellant captioned this case as: "Petition of: Beretta U.S.A. Corp. for judicial review of the decision of the Prince George's County Human Relations Commission in the case of: Peter Santos v. Beretta U.S.A. Corp." In its brief, however, Beretta did not name the Commission as the appellee. Instead, it refers to Mr. Santos as the only appellee. The brief filed on Mr. Santos's behalf was submitted by the Prince George's County attorney's office, but that office did not suggest that the action was incorrectly captioned. In its reply brief, Beretta suggests that the Commission is the actual appellee. Although it appears to us that the Commission should have been named as the appellee, we will refer to Mr. Santos as the appellee, just as the parties have done.

III.  Did the Commission violate its own rules when the Commission members who awarded back pay and damages did not participate in the hearings at which testimony was offered?

At oral argument, we raised, *nostra sponte*, the additional issue of whether we have jurisdiction to hear the appeal. Thereafter, we granted the parties leave to file supplemental memoranda on the jurisdictional issue; appellant filed a supplemental memorandum, but appellee did not.

For the reasons that follow, we shall vacate, in part, the order of the circuit court, and remand for further proceedings.

### Factual Background

Beretta manufactures firearms at a plant in Accokeek, Maryland.  The machine factory at the plant has four major lines:  the frame line, the barrel line, the small parts line, and the slide line.  Operators on each line are supervised by set-up people, who function as the liaisons between the operators and the managers.  In addition, set-up people are responsible for making adjustments to the machines on each of the lines, changing the cutting tools on the machines, and gauging the parts that are produced by the machines to ensure that they are within acceptable tolerance levels.

Mr. Santos was hired in August 1987, and he became a set-up person on the frame line in April 1991.[2]  On December 11, 1991, appellee filed a complaint with the Commission, alleging discrimination based on race (black) and national origin (Puerto Rican).  As a result of conciliation, appellant and appellee signed a settlement agreement, which was ratified by the Commission on February 24, 1992.  Approximately two months later, on April 29, 1992, appellant terminated appellee.

The events that prompted appellee's discharge are hotly disputed.  Appellant contends that on April 29, 1992, appellee

---

**2.**  Appellant states that this is the second time that Mr. Santos became a set-up person on the frame line.  According to appellant, Mr. Santos was ·transferred back to the frame line in April 1991 because he believed that he was skilled in the equipment on that line and because of his prior experience there.

yelled at Cleo Hall, a machine operator on the frame line who had complained to appellee that her machine was producing parts that were not within acceptable tolerance limits. As a result of this confrontation, appellant argues that Hall burst into tears and immediately complained to the operations manager, Tom Valorose. According to appellant, Mr. Santos had ordered Hall to continue operating the machine even though it was producing nonconforming parts. Consequently, Valorose fired appellee that day "for poor job performance," which Valorose explained as Santos's inability to deal with the operators and to "solve, diagnose, and correct problems."

On April 29, 1992, the day Mr. Santos was discharged from appellant's employ, he filed a complaint with the Commission alleging that his termination was in retaliation for filing the earlier complaint in December 1991. Beretta denied appellee's allegation and, instead, maintained that Mr. Santos had been terminated for cause. Accordingly, the Commission investigated Mr. Santos's claim. Thereafter, on January 14, 1994, the Commission found that there was reasonable cause to believe that appellant terminated appellee in retaliation for having filed the December 11, 1991, complaint. On April 7, 1994, the Commission unsuccessfully attempted to conciliate the dispute.

After the reasonable cause determination, Beretta answered appellee's complaint. Beretta asserted that Prince George's County Code § 2–195.01, which authorizes the Commission to order damages for humiliation and embarrassment, is unconstitutional on the grounds that (1) it violates Md. Const. Art. XI–A; (2) it violates the Express Powers Act, Md.Code (1957, 1996, Repl.Vol., 1997 Cum.Supp.), Art. 25A; (3) it conflicts with general State law; (4) it is not local law; (5) it is an unlawful delegation of judicial power to an administrative agency; and (6) it violates Beretta's right to a jury trial. On April 25, 1994, the case was certified for public hearing before a three-member panel of the Commission.[3]

---

3. Prince George's County Code § 2–187(a) provides that the Commission shall be composed of 13 members. They are appointed by the County Executive and confirmed by the County Council.

Between October 1994 and February 1996, the hearing panel held seven days of public hearings.[4] After the fifth hearing on February 7, 1995, two of the three commissioners on the hearing panel were replaced. In an undated report, the hearing panel, composed of the three commissioners who were in place for the final two hearing dates, issued its findings of fact. In an order dated June 24, 1996, the Commission adopted the hearing panel's report. The hearing panel's report, which accompanied the Commission's order, stated, in pertinent part:

### Findings

Testimony presented to the Commission revealed that a causal link existed between the filing of the discrimination complaint by [Mr. Santos] and [Mr. Santos's] termination. The Commission finds that [Mr. Santos's] charge is valid on the basis of retaliation discrimination.

Exhibits and testimony presented at the hearings revealed that employee skills and work performance are reviewed annually at Baretta [sic]. [Mr. Santos's] performance appraisals from 1987 to 1990 were very good and excellent. The appraisals presented were written while [Mr. Santos] was under the supervision of several people.

[Mr. Santos's] performance appraisals began to change in 1991. The appraisals reflected an overall evaluation of "fair" as opposed to "very good" and excellent. Testimony and employment records reflected that [Mr. Santos] was assigned to a new supervisor. Once [Mr. Santos] filed a discrimination charge in 1991, he was transferred to a different position and not provided with training. This seemed to be a set-up for failure. The Commission found that retaliation was the reason the complainant was reassigned to a different position without training. The Com-

---

4. Hearings were held on the following dates: October 5, 1994; December 9, 1994; December 10, 1994; February 6, 1995; February 7, 1995; December 19, 1995; and February 6, 1996. The hearing on October 5, 1994, was limited to scheduling, and no testimony was received.

mission found that this move was intended to create a performance problem for Mr. Santos.

[Beretta] alleges that [Mr. Santos] was terminated for poor performance and poor problem solving skills. According to Baretta's [sic] performance criteria, poor performance involves relationships with other operators and the inability to solve problems. Testimony presented by Baretta's [sic] operations manager, Tom Vallrose [sic] reveals that [Mr. Santos] was fired because he failed to listen and knowingly ordered an employer [sic] to run bad parts. The Commission found that other employees had run bad parts but had only been reprimanded, not terminated.

Additionally, the Operations Manager questioned [Mr. Santos's] relationship with other operators based on [Mr. Santos's] alleged treatment of a specific employee, Cleo Hall. Mr. Vallrose believed that Mr. Santos' treatment of Ms. Hall caused her to burst into tears....

[Beretta] states that Mr. Santos was terminated because he was unable to gauge Ms. Hall's machine properly. Whether Mr. Santos could fix the machine was never determined because [Mr. Santos] was never given the chance to repair the machine. Even if [Mr. Santos] had been given a chance to repair the machine, [Mr. Santos] isn't a machinist and wasn't trained to repair machines. Additionally, the machine in question had a repair request lodged by [Mr. Santos] less than a week before the termination. However, at the time of the incident, the machine had not been repaired. This repair request leads the Commission to believe that machine error rather than human error caused bad parts to be produced.

**Conclusions**

The Commission finds that [Mr. Santos's] charge is valid on the basis of retaliation discrimination. [Beretta's] action in firing [Mr. Santos] was a direct retaliation for the claim of discrimination filed by [Mr. Santos] in December 1991. It is also apparent that the preponderance of the evidence of record supports the conclusion that [Mr. Santos] sustained

his burden of showing that the firing was the result of retaliation.

As a result of the aforementioned, the Commission found for [Mr. Santos].

**Decision**

The Commission finds that [Mr. Santos] has suffered embarrassment, humiliation and a loss of wages. The Commission recommends that a partial re-hearing be held to determine damages to [Mr. Santos].

The Commission orders that [Beretta] cease and desist from this type of conduct in the future.

On July 24, 1996, appellant filed a motion for reconsideration, asserting, *inter alia,* that Prince George's County Code § 2–195.01, which authorizes damages for humiliation and embarrassment, conflicts with Md.Code (1957, 1994 Repl.Vol.), Art. 49B, § 11(e), which limits monetary relief for employment discrimination to back pay. On July 31, 1996, the Commission issued a notice to the parties announcing that the partial rehearing on damages would be held on August 26, 1996. The notice stated, in part: "Each party will have 30 minutes to present legal arguement [sic] limited to the evidence and testimony of record only to the full Commission." The partial rehearing was conducted by six commissioners, none of whom took part in the prior proceedings. At the rehearing, appellant asserted that the Commission "should have held a complete rehearing on the entire matter." Appellant's counsel also presented argument on the issue of back pay and damages. In addition, appellant reiterated its challenges to the validity of Prince George's County Code § 2–195.01.

At some point after the partial rehearing, the Commission issued a "Decision and Order After Partial Re–Hearing" (the "Decision"). Although the Decision is undated, the record contains a date stamped copy indicating that it was "received" on October 16, 1996. The Decision incorporated the hearing panel's earlier findings and included, in pertinent part, the following additional findings as a result of the August 26, 1996, partial rehearing:

After involuntary termination from Beretta U.S.A. Corporation on April 29, 1992, [Mr. Santos] worked for Kop Flex I, Kaydon Ring and Seal, Stanley Engineering, and BPS where he earned an hourly rate below the $14.80 that he earned at Beretta. Evidence showed that [Mr. Santos] did not reach his previous salary of $14.80 per hour until September 26, 1994 when his salary at Kop Flex I was raised to $14.81 per hour.

Exhibits 1, 2 and 3 (which were accepted into evidence after review by [Beretta's counsel] who commented that "they clarified the record") indicated that [Mr. Santos] mitigated his damages when he received unemployment compensation totaling $4,014.00 in 1992 and $669.00 in 1993. Damages were further mitigated by [Mr. Santos] through his employment. Exhibits 1, 2 and 3 indicated that [Mr. Santos] earned $19,094.00 in 1992, $5,730.40 in 1993 and $12,866.40 in 1994. On September 26, 1994, [Mr. Santos] received a salary increase of $0.43 per hour which brought his income above the $14.80 hourly rate that he received before his involuntary separation from Beretta.

Evidence also indicated that [Mr. Santos] experienced embarrassment and humiliation. [Mr. Santos] testified feeling that he was robbed of his dignity and manhood. Additionally, he stated that his inability to pay his bills caused a low self esteem and contributed to tension between [Mr. Santos] and his spouse.

The Commission then awarded Mr. Santos $37,690.80 for lost wages and $20,000.00 in damages for embarrassment and humiliation. The order did not address appellant's challenge to the validity of Prince George's County Code § 2–195.01.

Subsequently, appellant sought judicial review of the Commission's order in the Circuit Court for Prince George's County. There, Beretta asserted that (1) the Commission's finding of retaliation was not supported by substantial evidence; (2) appellee failed to meet his burden of proof regarding back pay; (3) the Commission did not follow its own rules in awarding back pay and humiliation and embarrassment damages; (4) the Commission did not explain its calculation of

back pay; (5) the Commission's finding of humiliation and embarrassment was not supported by substantial evidence; and (6) the County Code provision permitting the award of embarrassment and humiliation damages is unconstitutional. In an order dated May 22, 1997, the circuit court affirmed the Commission's order.

Regarding appellant's argument that the Commission's findings were not supported by substantial evidence, the circuit court stated:

The [Commission's] determination that there existed sufficient evidence to sustain complainant's allegations of retaliation discrimination was reasonable based upon the facts before it. The [Commission] found a causal link between the filing of [Mr. Santos's] first complaint and his termination, and [Beretta] was unable to provide a legitimate justification for the dismissal. The record is clear that [the Commission's] findings were based on substantial evidence.

[Beretta] fails to state any areas where the [Commission] failed to correctly apply the law; therefore, no basis exists upon which to overturn the [Commission's] decision. The [Commission] investigated the facts to determine if a violation of the Prince George's County Code had occurred, and such a violation was found.

In rejecting appellant's argument that Mr. Santos had failed to meet his burden of proof regarding back pay and damages, the court said:

[Mr. Santos], to establish a prima facie case, only had to produce enough information to have allowed the [Commission] to infer that discrimination occurred. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Complainant met this burden by showing that his performance evaluations were very good until 1991, when the problems at issue started; *through his testimony about racial slurs* and being switched to job tasks for which he was not trained; *and through corroborating testimony by Patrick Butler about disparate treatment directed toward African Americans.*

(Emphasis added). Further, the court rejected appellant's challenge to Prince George's County Code § 2–195.01, stating that it did not conflict with State law. The court did not address appellant's argument that the Commission did not follow its own rules in awarding back pay and humiliation and embarrassment damages.

We shall include additional facts in our discussion.

## Discussion

### I.

The Commission's Order and Decision were the subject of judicial review in the circuit court. As a threshold matter, we must resolve whether we have jurisdiction to entertain this appeal from an administrative agency of Prince George's County. We raised the jurisdictional issue because of our recent decision in *Healthcare Strategies, Inc. v. Howard County Human Rights Comm'n,* 117 Md.App. 349, 700 A.2d 278 (1997). In that case, we held that this Court lacked jurisdiction to review the circuit court's dismissal of a petition for judicial review of a decision of the Howard County Human Rights Commission.

█ The Court of Special Appeals is a court of limited jurisdiction. Therefore, we may not hear every appeal that is brought before us. *Healthcare Strategies,* 117 Md.App. at 353, 700 A.2d 278. Our jurisdiction in this matter is limited by Maryland Code (1974, 1995 Repl.Vol.), §§ 12–301 and 12–302 of the Courts and Judicial Proceedings Article ("C.J."). C.J. § 12–301 provides:

Except as provided in § 12–302 of this subtitle, a party may appeal from a final judgment entered in a civil ... case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law....

The pertinent exception is set forth in C.J. § 12–302(a), which states:

Unless a right to appeal is expressly granted by law, § 12–301 does not permit an appeal from a final judgment of a court entered or made in the exercise of appellate jurisdiction in reviewing the decision of ... an administrative agency, or a local legislative body.

■ A circuit court *never* exercises appellate jurisdiction when it directly reviews an administrative decision. Instead, the circuit court's review of an administrative agency decision constitutes an exercise of that court's *original* jurisdiction. *See Colao v. County Council,* 346 Md. 342, 359–60 & n. 6, 697 A.2d 96 (1997); *Gisriel v. Ocean City Board of Supervisors of Elections,* 345 Md. 477, 491–92, 693 A.2d 757 (1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 702, 139 L.Ed.2d 645 (1998). Although sometimes called an "appeal" to the circuit court, the technical and accurate term to describe the circuit court's function in such matters is that of "judicial review." The Court of Appeals has construed the circuit court's judicial review of administrative actions to fall within the ambit of C.J. § 12–302(a). *See Gisriel,* 345 Md. at 496, 693 A.2d 757; *Prince George's County v. American Fed'n of State, County & Mun. Employees,* 289 Md. 388, 397–400, 424 A.2d 770 (1981).

■ Prince George's County Code § 2–197(c) provides that "[a]ny party aggrieved by a final decision by the Commission is entitled to file an appeal pursuant to Subtitle B of the Maryland Rules of Procedure." The B Rules were rescinded effective July 1, 1993. Those rules, which govern judicial review of administrative actions, now appear, without substantive change, in Title 7, Chapter 200 of the Maryland Rules. *See County Council v. Offen,* 334 Md. 499, 504 n. 2, 639 A.2d 1070 (1994). The rules do not provide for further judicial review by this Court. *Healthcare Strategies,* 117 Md.App. at 355, 700 A.2d 278. Moreover, of particular significance here, Prince George's County has not conferred a right of appeal to this Court, although it could have done so. *See id.* at 354, 700 A.2d 278 ("[A]ny right to appeal to this Court from a circuit court review of its actions must be found in the county law creating the agency and governing its operations."). In addi-

tion, the Administrative Procedure Act does not authorize judicial review of the Commission's decisions, because the Commission does not "operate[ ] in at least two counties" and thus does not satisfy the definition of an "agency." *See* Md.Code (1984, 1995 Repl.Vol., 1997 Cum.Supp.), § 10-202(b)(2)(ii) of the State Government Article.

Appellant argues that it is entitled to pursue this appeal because the substance of its action in the circuit court involved an exercise of that court's original jurisdiction, not statutory judicial review. Relying on *Gisriel*, 345 Md. at 477, 693 A.2d 757, appellant argues that, in essence, its action before the circuit court was either an action for declaratory judgment or mandamus, involving the circuit court's exercise of original jurisdiction, not statutory judicial review. Thus, Beretta claims that this Court has jurisdiction to review the circuit court's judgment. We turn to consider both *Gisriel* and *Healthcare Strategies*.

In *Healthcare Strategies*, we distinguished *Levitz Furniture Corp. v. Prince George's County*, 72 Md.App. 103, 527 A.2d 813, *cert. denied*, 311 Md. 286, 533 A.2d 1308 (1987). *Levitz* involved the consolidation of two actions: Levitz's action seeking judicial review of the Commission's findings and an enforcement action brought by the Commission. On appeal, the *Levitz* Court concluded that it had jurisdiction to review Levitz's appeal because it was part of a "unitary judgment." *Id.* at 108, 527 A.2d 813. We then considered the appeal on the merits and concluded that the Commission's factual findings were not supported by substantial evidence. *Id.* at 115, 527 A.2d 813. In *Healthcare Strategies*, we noted the difference between the posture of that case and *Levitz*, explaining:

[I]f in addition to exercising its appellate jurisdiction the circuit court exercised original jurisdiction, we would have jurisdiction to review *that portion of the circuit court's final judgment.*

*Healthcare Strategies*, 117 Md.App. at 355, 700 A.2d 278 (emphasis added) (citing *Levitz*, 72 Md.App. at 108, 527 A.2d 813). Because the circuit court's dismissal did not constitute an act of original jurisdiction, however, we concluded in

*Healthcare Strategies* that we did not have jurisdiction to hear the appeal.

The controversy in *Gisriel* involved whether the Board of Supervisors of Elections was required to remove the names of unqualified voters before determining the percentage of voters who had signed a petition for a referendum. The case was brought to the circuit court as an action seeking judicial review of the Board's action. Nevertheless, the Court of Appeals looked beyond the form of the action and focused on the substance of the complaint. In doing so, the Court of Appeals concluded that this Court had appellate jurisdiction because "the nature of [the] action [before the circuit court] was not a statutory judicial review" but instead "in substance was a traditional common law mandamus action." *Id.* at 496–97, 693 A.2d 757. Accordingly, the Court of Appeals determined that the circuit court was not exercising "appellate" jurisdiction, but instead was exercising original jurisdiction. Therefore, C.J. § 12–302(a) did not preclude appellate review.

■ Applying these principles to the case *sub judice*, we conclude that we have jurisdiction to consider Beretta's constitutional challenge to the Prince George's County Code, which authorizes damages for embarrassment and humiliation. Because the nature of Beretta's claim was, in substance, a declaratory action, the circuit court exercised original jurisdiction and not "appellate" jurisdiction. Similarly, we are satisfied that we have jurisdiction to consider appellant's claim that the Commission failed to follow its own rules when it awarded back pay and damages without any commissioner being "present and participating" at the hearing. Our conclusion in this regard is grounded on our view of this issue as substantively analogous to a mandamus action or a declaratory action for violation of Beretta's due process rights. Because the substance of appellant's claims before the circuit court invoked the court's original jurisdiction, it is immaterial that the form of appellant's claim was in the nature of an action for judicial review. *Gisriel*, 345 Md. at 496–97, 693 A.2d 757. By raising the constitutional issues at the administrative level, we are equally satisfied that appellant's claims are preserved and it

has exhausted its administrative remedies. *See generally Holiday Point Marina Partners v. Anne Arundel County,* 349 Md. 190, 199–204, 707 A.2d 829 (1998).

■ The remaining issue involves Beretta's argument that the Commission's findings of fact are not supported by substantial evidence. As this issue relates to the circuit court's exercise of judicial review, we do not have jurisdiction to consider it on appeal. *Healthcare Strategies,* 117 Md.App. at 355, 700 A.2d 278. Admittedly, this conclusion seems at odds with our earlier decision in *Levitz,* in which we considered the merits of Levitz's "appeal" challenging the agency's factual findings. Nevertheless, the *Gisriel* Court appears to have foreclosed our review of this issue. The Court reasoned:

Any issues requiring the resolution of disputed facts would not arise until the Board begins to perform [its] duty. A subsequent judicial review of the manner in which the Board and Council performed the duty, involving the substantiality of the evidence supporting factual findings, the reasonableness of inferences and conclusions, etc., would constitute a judicial review action authorized by [the applicable provision] of the Ocean City Charter. *Section 12–302(a) presumably would be applicable to such an action.* But a court action to determine in the first instance whether the Board must perform the duty is, by its very nature, a traditional common law mandamus action.

*Gisriel,* 345 Md. at 498, 693 A.2d 757 (emphasis added); *see also Healthcare Strategies,* 117 Md.App. at 355, 700 A.2d 278.

The decision to limit our review to those matters involving the circuit court's original jurisdiction is a practical one. Were we to permit an appeal from all issues decided by the agency merely because one or two issues involved original jurisdiction, we would be inviting mischief. As long as a party attempting to challenge an agency's factual findings includes an issue invoking the circuit court's exercise of original jurisdiction, that party would be assured of obtaining appellate review in this Court over the entire action. In essence, we would be creating an exception to C.J. § 12–302(a) that would swallow the rule. We decline to do so, especially in a case

such as this, in which we can easily separate the issues involving the lower court's exercise of judicial review and original jurisdiction.

Accordingly, we hold that we have jurisdiction to consider Beretta's appeal regarding (1) the constitutionality of the provision of Prince George's County Code authorizing damage awards of up to $100,000 for humiliation and embarrassment and (2) whether the Commission violated its own rules when it made its back pay and damage awards. In contrast, the issue with respect to the adequacy of the evidence to support the Commission's findings concerns the circuit court's exercise of judicial review.[5] Therefore, we do not have jurisdiction to consider this particular issue on appeal. C.J. § 12–302(a); *Gisriel,* 345 Md. at 498, 693 A.2d 757; *Healthcare Strategies,* 117 Md.App. at 355, 700 A.2d 278; *cf. Levitz,* 72 Md.App. at 108, 527 A.2d 813.

## II.

Appellant contends that Prince George's County Code § 2–195.01(a)(3) is unconstitutional because (1) it conflicts with State law; (2) it is a general law and not a local law; (3) it is an impermissible delegation of judicial power; and (4) it violates Beretta's due process rights.

Section 2–195.01(a) of the County Code provides:

In addition to the other awards and relief which are hereinafter provided, the Commission panel may, in accor-

---

5. As *Gisriel* recognized, we could also consider whether the Commission failed to perform a non-discretionary duty in making findings of fact. 345 Md. at 498, 693 A.2d 757. Although Beretta makes that argument in its supplemental memorandum on jurisdiction, in its original brief to this Court it merely argued that the Commission's findings are not supported by substantial evidence. Because the argument was not made in appellant's opening brief, we do not consider it here. Md. Rule 8–504; *Federal Land Bank v. Esham,* 43 Md.App. 446, 458–59, 406 A.2d 928 (1979); *see also Beck v. Mangels,* 100 Md.App. 144, 149, 640 A.2d 236 (1994), *cert. dismissed,* 337 Md. 580, 655 A.2d 370 (1995). Even if Beretta had argued in its opening brief that the Commission failed to make any factual findings, a review of the record clearly indicates that the Commission did, in fact, make factual findings.

dance with the standards of proof set forth in Section 2–195, also make the following monetary orders determined by the Commission panel from the evidence of record as the actual damages, costs, or losses involved, or in such amounts as may be specified below:

    \*     \*     \*     \*     \*     \*

(3) Damages may also be awarded to compensate complainant for humiliation and embarrassment suffered in an amount determined by the Commission panel to be appropriately and reasonably warranted considering all of the circumstances, but in no event shall the amount be in excess of One Hundred Thousand Dollars ($100,000.00).

Section 2–195 provides:

(a) If, upon all the evidence, the Commission by a majority vote of the full Commission finds that the respondent has engaged in any discriminatory action or wrongful practice within the scope of this Division, it shall so state its findings. The Commission shall issue and cause to be served upon the respondent an order requiring the respondent to cease and desist from the unlawful discriminatory action or prohibited practice and to take such affirmative action as equity and justice may require and prospective relief as is necessary to effectuate the purposes of the Division.

(b) Such order must be reasonably related to the violation, and may include a requirement of reimbursement of actual expenses to the complainant arising out of the wrongful conduct of the respondent, and in employment cases may include the awarding of back pay and reimbursement of actual expenses caused by wrongful conduct of the respondent to a complainant employee.

■ Prince George's County is a charter home rule county, having adopted a charter form of government in accordance with Article XI–A of the Maryland Constitution, known as the Home Rule Amendment.[6] Prince George's County is thus

---

6. Article XI–A was proposed by 1914 Md. Laws Chap. 416. It was ratified by the electorate on November 2, 1915. *See McCrory Corp. v. Fowler,* 319 Md. 12, 16, 570 A.2d 834 (1990).

subject to the Express Powers Act. *See Holiday Point*, 349 Md. at 198, 707 A.2d 829. Although Article XI–A does not confer legislative powers directly upon charter counties, Section 2 of Article XI–A requires the Legislature to "delegate those powers exercisable by [charter] counties. . . ." *Ritchmount Partnership v. Board of Supervisors of Elections*, 283 Md. 48, 57, 388 A.2d 523 (1978). In 1918, in response to the constitutional directive, the Legislature enacted the Express Powers Act, now codified in Md.Code (1957, 1996 Repl.Vol., 1997 Cum.Supp.), Art. 25A. It recognizes the power of a county council in a home rule county to enact local ordinances to maintain "the peace, good government, health and welfare of the county," Code, Art. 25A, § 5(S), and gives charter counties and Baltimore City "a wide array of legislative and administrative powers over local affairs." *Ritchmount*, 283 Md. at 57, 388 A.2d 523; *see Cheeks v. Cedlair Corp.*, 287 Md. 595, 610–11, 415 A.2d 255 (1980). The scope of a charter county's general welfare power is considered as broad at the local level as that of the General Assembly at the State level. *See, e.g., Prince George's County v. Chillum–Adelphi Volunteer Fire Dep't, Inc.*, 275 Md. 374, 382, 340 A.2d 265 (1975).

By permitting charter counties to enact many kinds of public local laws for the welfare of the county, the Express Powers Act affords charter counties "a significant degree of political self-determination." *McCrory Corp. v. Fowler*, 319 Md. 12, 16, 570 A.2d 834 (1990); *see, e.g., Montgomery Citizens League v. Greenhalgh*, 253 Md. 151, 162, 252 A.2d 242 (1969) (explaining that county's authority to enact housing ordinance that prohibited discrimination based upon race was a valid exercise of police power under Art. 25A, § 5(S)); *Holiday Universal Club of Rockville, Inc. v. Montgomery County*, 67 Md.App. 568, 575, 508 A.2d 991 (same, regarding discrimination in public accommodations), *cert. denied*, 307 Md. 260, 513 A.2d 314 (1986), *appeal dismissed*, 479 U.S. 1049, 107 S.Ct. 920, 93 L.Ed.2d 973 (1987); *see also Snowden v. Anne Arundel County*, 295 Md. 429, 432–33, 456 A.2d 380 (1983); *Bradshaw v. Prince George's County*, 284 Md. 294, 298–99, 396 A.2d 255 (1979); *Steimel v. Board of Election*

*Supervisors,* 278 Md. 1, 6–8, 357 A.2d 386 (1976); *County Council v. Investors Funding Corp.,* 270 Md. 403, 415, 312 A.2d 225 (1973). Nevertheless, such powers may be exercised only "to the extent that the same are not provided for by public general law. . . ." Md.Code, Art. 25A, § 5(S). Indeed, Article XI–A provides that it "does not constitute a grant of absolute autonomy to local governments." *Ritchmount,* 283 Md. at 56, 388 A.2d 523. Rather, as the Court observed in *McCrory,* 319 Md. at 16–17, 570 A.2d 834, Article XI–A was designed to provide a certain amount of self-autonomy to charter counties and Baltimore City in matters of purely local concern. There are, however, occasions when a local law is invalid or of no effect as a result of State law.

Article XI–A does not attempt to define the distinction between a local law and a general law. Instead, that question is left to the " 'application of settled legal principles to the facts of particular cases in which the distinction may be involved.' " *McCrory,* 319 Md. at 17, 570 A.2d 834 (quoting *Dasch v. Jackson,* 170 Md. 251, 260, 183 A. 534 (1936)); *see Steimel,* 278 Md. at 5–6, 357 A.2d 386.

■ It is clear, however, that State law may preempt local law " 'in one of three ways: (1) preemption by conflict, (2) express preemption, or (3) implied preemption.' " *Holiday Point,* 349 Md. at 209, 707 A.2d 829 (quoting *Talbot County v. Skipper,* 329 Md. 481, 487–88, 620 A.2d 880 (1993) (footnotes omitted)); *see Perdue Farms Inc. v. Hadder,* 109 Md.App. 582, 588, 675 A.2d 577 (1996); *May Dep't Stores v. Montgomery County,* 118 Md.App. 441, 462, 702 A.2d 988 (1997), *cert. granted,* 349 Md. 237, 707 A.2d 1330 (1998). In *AD + Soil, Inc. v. County Commissioners of Queen Anne's County,* 307 Md. 307, 324, 513 A.2d 893 (1986), the Court explained:

The doctrine of pre-emption is grounded upon the authority of the General Assembly to reserve for itself exclusive dominion over an entire field of legislative concern. When properly invoked, the doctrine precludes local legislative bodies from enacting any legislation whatsoever in the pre-empted field.

Although "[a]busive employment practices constitute a statewide problem which has been addressed by the General Assembly...." *McCrory,* 319 Md. at 20, 570 A.2d 834, we are satisfied that the Legislature has not preempted the entire field of employment discrimination law. To the contrary, the *McCrory* Court recognized that "the field [of employment discrimination] has not been preempted by the State, and ... home rule counties have concurrent authority to provide administrative remedies *not in conflict with state law." Id.*

Notwithstanding that the General Assembly has conferred upon charter counties the power to enact and enforce laws prohibiting discrimination in employment, *see National Asphalt Pavement Assn', Inc. v. Prince George's County,* 292 Md. 75, 80–81, 437 A.2d 651 (1981), the question for our determination is whether the County's compensatory provisions conflict with State law. Assuming, *arguendo,* that the County law in issue constitutes a local law, it would be invalid if it conflicts with a public general law enacted by the General Assembly. *See Coalition for Open Doors v. Annapolis Lodge No. 622,* 333 Md. 359, 379, 635 A.2d 412 (1994); *Investors Funding Corp.,* 270 Md. at 419–20, 312 A.2d 225; *Mayor of Baltimore v. Sitnick,* 254 Md. 303, 312–17, 255 A.2d 376 (1969); *County Comm'rs v. Soaring Vista Properties, Inc.,* 121 Md.App. 140, 155, 708 A.2d 1066 (1998).

"Preemption by conflict exists if a local ordinance 'prohibits an activity which is intended to be permitted by state law, or permits an activity which is intended to be prohibited by state law.'" *May Dep't Stores,* 118 Md.App. at 462, 702 A.2d 988 (quoting *Perdue Farms,* 109 Md.App. at 588, 675 A.2d 577 (footnote omitted)). *Accord, Holiday Point,* 349 Md. at 210, 707 A.2d 829; *Skipper,* 329 Md. at 487 n. 4, 620 A.2d 880. Indeed, Article XI–A provides that, in the event of a conflict between a local law enacted by a charter county and a Public General Law of the State, "the Public General Law shall control." Md. Const., Art. XI–A, § 3. Nevertheless, when a local ordinance and a State law "employ wholly different means" to further the same objective or policy, and

they "regulate entirely separate and distinct activities," a conflict may not exist. *Holiday Point,* 349 Md. at 211, 707 A.2d 829. Moreover, "[w]hen state law simply regulates a matter to a limited extent, our cases have not ordinarily attributed to the General Assembly an intent to preempt local law regulating the matter to a greater extent." *Id.* at 211 n. 6, 707 A.2d 829.

Under State law, the relief available to a complainant for employment discrimination is governed by Md.Code (1957, 1994 Repl.Vol.), Art. 49B, § 11(e), and common law. *See Molesworth v. Brandon,* 341 Md. 621, 636–37, 672 A.2d 608 (1996) (holding that common law action for wrongful discharge is available if statutory remedy is not otherwise applicable). Md.Code, Art. 49B, § 11(e) currently states, in pertinent part:

If the respondent is found to have engaged in or to be engaging in an unlawful employment practice charged in the complaint, the remedy may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief that is deemed appropriate. *The award of monetary relief shall be limited to a 36–month period.* The complainant may not be awarded monetary relief for losses incurred between the time of the Commission's final determination and the final determination by the circuit court or higher appellate court, as the case may be. *Interim earning or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the monetary relief otherwise allowable.*

(Emphasis added).

The Court of Appeals explained in *Makovi v. Sherwin– Williams Co.,* 316 Md. 603, 561 A.2d 179 (1989), that when the General Assembly added remedies to Art. 49B, they were limited to equitable relief, including back pay. *Id.* at 623, 561 A.2d 179. The Legislature expressly rejected amendments that would have permitted awards for compensatory and

punitive damages, including damages for "pain of mental anguish and humiliation." *Id.* at 625, 561 A.2d 179. After *Makovi* was decided, the Legislature amended § 11(e) to extend the limit for monetary relief from two years to 36 months. The General Assembly has not authorized the award of humiliation and embarrassment damages, however.

In 1995, the Legislature amended the Express Powers Act with regard to the authority of home rule counties to address employment discrimination. 1995 Md. Laws Chap. 278. The Express Powers Act now provides, in pertinent part:

The following enumerated express powers are granted to and conferred upon any county or counties which hereafter form a charter under the provisions of Article XI–A of the Constitution, that is to say:

(A) *Local Legislation*

\*    \*    \*    \*    \*    \*

(4) To provide for the enforcement of local employment discrimination laws or public accommodations discrimination laws by fines or penalties that do not exceed $5,000 for any offense.

Md.Code (1957, 1996 Repl.Vol., 1997 Cum.Supp.), Art. 25A, § 5(A)(4). The purpose of the amendment was

to increase the maximum penalty that a charter county may impose under local laws relating to employment discrimination or in public accommodations; making stylistic changes; and generally relating to authorized penalties under local discrimination laws enacted by counties with charter home rule.

1995 Md. Laws Chap. 278.

In this case, the trial court, citing *University of Maryland v. Boyd,* 93 Md.App. 303, 311, 612 A.2d 305 (1992), concluded that there is no conflict here between Prince George's County Code § 2–195.01(a)(3) and State law, because Article 49B authorizes "broad powers to award equitable relief." *Boyd* is factually inapposite, however, as that case was limited to an award of back pay. The trial court also failed to recognize

that Art. 49B, § 11(e) expressly states that any *"award of monetary relief [for back pay] shall be limited to a 36–month period."* Although back pay is restitutionary in nature, damages are not. *See Curtis v. Loether*, 415 U.S. 189, 197, 94 S.Ct. 1005, 1010, 39 L.Ed.2d 260 (1974) (noting that, although in Title VII cases back pay is considered equitable in nature, compensatory damages and punitive damages are not equitable relief); *see also Magan v. Medical Mut. Liab. Ins. Soc'y*, 331 Md. 535, 542–43, 629 A.2d 626 (1993). To construe humiliation and embarrassment damages as equitable relief would render Art. 49B, § 11(e)'s limitation on monetary relief a nullity, and would violate our principle that we should "avoid imposing a construction on a statute that leads to results that are unreasonable, illogical or contrary to common sense." *In re Zephrin D.*, 69 Md.App. 755, 760, 519 A.2d 806 (1987); *see also Rouse–Fairwood Ltd. Partnership v. Supervisor of Assessments*, 120 Md.App. 667, 688, 708 A.2d 19 (1998).

In our view, Prince George's County Code § 2–195.01(a)(3) conflicts with Art. 49B, § 11(e). Section 2–195.01(a)(3) of the County Code permits recovery of back pay as well as compensatory damages for humiliation and embarrassment, up to $100,000.00. Thus, in the County, a successful complainant who had worked 40 hours per week, at a rate of $10.00 per hour, could conceivably be entitled to back pay relief of as much as $62,400.00 ($10.00 × 40 hours × 52 weeks × 3 years). In addition, pursuant to Prince George's County Code § 2–195.10(a)(3), the Commission could also award as much as $100,000.00 in damages for humiliation and embarrassment. Clearly, such an award exceeds the express limitation contained in Art. 49B, § 11(e).

In reaching our conclusion, *Sitnick*, 254 Md. at 303, 255 A.2d 376, is instructive. There, the Court considered alleged conflicts between two Baltimore City ordinances and State laws. One conflict involved a City ordinance that established a minimum wage of $1.25 per hour and a State law that established a minimum wage of $1.00 per hour. The other City ordinance included taverns within the scope of the minimum wage ordinance while State law exempted taverns from

the State minimum wage law. Concluding that the City and State had concurrent power to regulate wages, the Court held that the City could "supplement" the statewide minimum wage law by establishing a minimum wage standard higher than that provided in the State law. In addition, the Court held that the State had not precluded the City from including taverns within the scope of the ordinance. In determining that no conflict existed, the Court said:

> [W]e find that the purported conflicts properly lend themselves to the characterization of supplementation of the State law, rather than irreconcilable differences.
>
>     *     *     *     *     *     *
>
> In none of the provisions of the ... City law does it authorize a minimum wage which is lower than that provided by the State law, nor does it exempt any employees included under the State law; we think this is the crucial norm which must be used to measure the City law regarding any conflict with the statute.

*Id.* at 323–25, 255 A.2d 376. The Court also relied upon *Rossberg v. State,* 111 Md. 394, 74 A. 581 (1909), in which the Court held that a Baltimore City ordinance establishing more severe penalties for the sale and possession of cocaine than the penalties provided in a State statute did not conflict with the State law.

One could argue that *Sitnick* does not support appellant's position, because it arguably suggests that the County could not authorize recovery of back pay for *less* than 36 months, but it could permit a *greater* recovery. Nonetheless, we think *Sitnick* supports appellant's argument. In the case *sub judice,* the State has limited administrative monetary relief for employment discrimination to back pay for no more than a 36–month period. Md.Code Art. 49B, § 11(e). We read this as establishing a *maximum* level of administrative monetary relief, above which the charter counties may not go, rather than the minimum level that the Court discussed in *Sitnick.* Because Prince George's County Code § 2–195.01(a)(3) permits administrative monetary relief in excess of the maximum

established by State law, we conclude that it conflicts with Article 49B, § 11(e).

Appellee argues that there is no conflict because, since *Makovi* was decided, Congress expanded the damage remedies available under Title VII of the Civil Rights Act of 1991. Appellee cites various decisions purportedly construing the federal Act to permit compensatory damages, including damages for emotional anguish.

It is true that we look to federal case law interpreting Title VII in analogizing claims under Article 49B. *See Molesworth,* 341 Md. at 632–33, 672 A.2d 608; *State Comm'n on Human Relations v. Suburban Hosp., Inc.,* 113 Md.App. 62, 86, 686 A.2d 706 (1996), *vacated on other grounds,* 348 Md. 413, 704 A.2d 445 (1998). Nevertheless, we do so only "in the absence of contrary legislative pronouncements on the Maryland law." *Molesworth,* 341 Md. at 633, 672 A.2d 608. Thus, neither amendments to the federal law nor federal decisions interpreting Title VII contravene the express legislative language of Article 49B, § 11(e), which limits monetary relief to back pay.[7]

Appellee also asserts that the Commission's authority to award damages pursuant to § 2–195.01(a)(3) of the Prince George's County Code is grounded in Art. 25A, § 5(A)(5), not § 5(A)(4). Section 5(A)(5) expressly grants authority "[t]o provide for enforcement of all ordinances, resolutions, bylaws, and regulations adopted under the authority of this article by civil fines and penalties." As we noted previously, § 5(A)(4) provides for the imposition of fines or penalties up to $5000 to enforce a discrimination "offense." Appellee argues that the word "offense" in Art. 25A, § 5(A)(4) indicates that it is a criminal provision, whereas the word "civil fines" in Art. 25A, § 5(A)(5) indicates that Art. 25A, § 5(A)(5) is the source of

---

7. It is also unclear whether compensatory damages can be awarded by the Equal Opportunity Employment Commission under Title VII at the administrative level if the employer is not entitled to a jury trial to contest the award. *See Gibson v. Brown,* 137 F.3d 992, 996 (7th Cir.1998); *cf. Fitzgerald v. Secretary, Veterans Affairs,* 121 F.3d 203 (5th Cir.1997).

statutory authority to award damages like those contemplated by § 2–195.01(a)(3) of the Prince George's County Code. We disagree.

The County's authority to award *damages* for violation of its anti-employment discrimination ordinance is permitted under the broad power afforded by Art. 25A, § 5(S). Article 25A, § 5(S) provides, in pertinent part:

> The foregoing or other enumeration of powers in this article shall not be held to limit the power of the county council, in addition thereto, to pass all ordinances, resolutions or bylaws, not inconsistent with the provisions of this article or the laws of the State, as may be proper in executing and enforcing any of the powers enumerated in this section or elsewhere in this article, as well as such ordinances as may be deemed expedient in maintaining the peace, good government, health and welfare of the county.

> Provided, that the powers herein granted shall only be exercised to the extent that the same are not provided for by public general law. . . .

Thus, any authority to the Commission to award damages for a violation of the Prince George's County anti-discrimination ordinance would be a remedial power under Art. 25A, § 5(S). *See Investors Funding,* 270 Md. at 415, 440–41, 312 A.2d 225; *see also Greenhalgh,* 253 Md. at 162, 252 A.2d 242 (explaining that county's authority to enact housing ordinance that prohibited discrimination based upon race was a valid exercise of police power under Art. 25A, § 5(S)); *Holiday Universal,* 67 Md.App. at 575, 508 A.2d 991 (same, regarding discrimination in public accommodations).

In *Investors Funding,* the Court considered a constitutional challenge to the enforcement provisions of a Montgomery County landlord-tenant ordinance. The ordinance permitted a commission on landlord-tenant affairs to enforce the various provisions of the act by, *inter alia,* imposing civil penalties up to $1,000.00, awarding money damages for actual loss (up to $1,000.00), terminating leases, ordering repairs and the return of security deposits and rental monies paid, and awarding

funds for temporary and substitute housing. *See* 270 Md. at 454–56, 312 A.2d 225 (Barnes, J., concurring in part and dissenting in part). Although the Court held the penalty provision illegal based on a lack of standards governing the agency's exercise of discretion, it held generally that the commission's authority to award such relief did not violate the Maryland Constitution. It did so on the ground that there had not been an invalid delegation of judicial power. *Investors Funding*, 270 Md. at 440–41, 312 A.2d 225. We note, however, that, the issue of conflict with State law did not arise with regard to the commission's remedial powers because, at that time, the State law did not authorize damages for housing or employment discrimination. *See Gutwein v. Easton Pub. Co.*, 272 Md. 563, 575–77, 325 A.2d 740 (1974), *cert. denied*, 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 673 (1975). Moreover, the authority to assess damages was limited to an award for actual losses. Thus, the conflict that we find today with regard to damages and monetary relief was not at issue in *Investors Funding*. Accordingly, on this point, *Investors Funding* is inapposite.

Similarly, in *Greenhalgh*, the Court upheld the county's authority to enact a fair housing ordinance. But the Court expressly indicated that the case did not involve any challenge to the specific provisions of the ordinance. 253 Md. at 165, 252 A.2d 242.

Appellee contends that our decision in *Hanna v. Emergency Medicine Assocs.*, 77 Md.App. 595, 551 A.2d 492 (1989), *cert. denied*, 315 Md. 691, 556 A.2d 673 (1989), establishes that damages for humiliation and mental anguish may be recovered administratively for a violation of the County's employment discrimination ordinance. As we see it, *Hanna* did not adjudicate the issue presented here. More important, however, the employment discrimination ordinance purportedly permitting recovery in *Hanna* was the same ordinance struck down by the Court of Appeals in *McCrory*. *See McCrory*, 319 Md. at 24, 570 A.2d 834 (holding that Montgomery County ordinance creating judicial cause of action for employment discrimination

was not a local law, and was, therefore, invalid); *Hanna,* 77 Md.App. at 604, 551 A.2d 492.

We hold, therefore, that Prince George's County Code § 2–195.01(a)(3), authorizing the Commission to award up to $100,000.00 in damages for humiliation and embarrassment, conflicts with Md.Code, Art. 49B, § 11(e). Therefore, the provision is invalid.[8]

Notwithstanding our holding, we recognize that, in response to *McCrory,* the General Assembly expressly authorized a private cause of action for damages. Article 49B, § 42 now provides:

> (a) *Authorized.*—In Montgomery County, Prince George's County, and Howard County, in accordance with this subtitle, a person who is subjected to an act of discrimination prohibited by the county code may bring and maintain a civil action against the person who committed the alleged discriminatory act for damages, injunctive relief, or other civil relief.

*    *    *    *    *    *

---

**8.** Because we have already determined that Prince George's County Code § 2–195.01(a)(3) is invalid, we decline to consider whether the Commission's discretionary authority to order substantial nonrestitutionary damages is an unconstitutional delegation of judicial authority. *See Walnut Creek Manor v. Fair Employment and Housing Comm'n,* 54 Cal.3d 245, 284 Cal.Rptr. 718, 730, 814 P.2d 704, 716 (1991) (In Bank) (holding state statute that authorized California's Fair Employment and Housing Commission to award compensatory damages for emotional distress violated the judicial powers clause of the state constitution); *Broward County v. La Rosa,* 505 So.2d 422, 423–24 (Fla.1987) ("[W]e cannot imagine a more purely judicial function than a contested adjudicatory proceeding involving disputed facts that results in an award of unliquidated common law damages for personal injuries in the form of humiliation and embarrassment."); *cf. Investors Funding,* 270 Md. at 441, 312 A.2d 225 (holding grant of remedial powers to county commission to award damages for actual loss suffered was "merely incidental, although reasonably necessary, to its regulatory powers"); *see also Magan,* 331 Md. at 546, 629 A.2d 626 (observing that, although damage claims for tortious wrongs have historically been a judicial function, the Court looks favorably upon delegation of such authority to administrative bodies, so long as sufficient guidelines exist to limit the exercise of discretion by administrative officials).

(c) *Fees and costs.*—In a civil action under this section, the court, in its discretion, may allow the prevailing party reasonable attorney's fees, expert witness fees, and costs.

Md.Code (1957, 1994 Repl.Vol., 1997 Cum.Supp.), Art. 49B, § 42. Therefore, damages and other relief provided by the County scheme may be recoverable in a civil action at law by one who is the victim of discrimination that is prohibited by the County. Nevertheless, even if the kind of relief afforded under Prince George's County Code § 2–195.01(a)(3) may be available in a civil action at law, it is not available administratively, because such an award conflicts with Art. 49B, § 11(e), which limits administrative monetary relief to back pay.

### III.

Alternatively, we hold that Prince George's County Code § 2–195.01(a)(3) is not a local law. An analysis of *McCrory,* 319 Md. at 12, 570 A.2d 834, and *Investors Funding,* 270 Md. at 403, 312 A.2d 225, compels this conclusion.

As we observed earlier, *Investors Funding* upheld Montgomery County's authority to enact an anti-housing discrimination ordinance that permitted a county agency to award damages and other relief to an aggrieved party. Admittedly, the power to authorize administrative damages was not beyond constitutional boundaries, because it was not deemed an invalid delegation of judicial power to an administrative agency. On the other hand, the civil monetary penalty provision was invalidated, because the Court determined that there were insufficient standards to guide the commission in exercising its discretion to impose a penalty. The *Investors Funding* Court stated:

> The power vested in the Commission by [the ordinance] to enforce the provisions of the Act by imposing a civil penalty not exceeding $1,000 "for the violation of any provision of this Chapter" is far more elastic than its power to award money damages to a landlord or tenant for *actual loss suffered* by reason of the Commission's finding of a defective tenancy.

*Investors Funding,* 270 Md. at 441, 312 A.2d 225 (emphasis added).

In *McCrory,* the Court held that Montgomery County's ordinance authorizing employment discrimination complainants to file civil suits for unlimited money damages was deemed invalid, because it was not a local law. Although *McCrory* did not involve the precise issue that we confront here, its discussion of *Investors Funding* is instructive, if not dispositive.

The ordinance at issue in *McCrory* authorized private citizens to bring private civil actions for unlimited money damages in circuit court, to redress employment discrimination. In holding that the ordinance was invalid, the Court explained:

> In creating a new judicial cause of action between private individuals, [the ordinance] encroaches upon an area which heretofore had been the province of *state* agencies. In Maryland, the creation of new causes of action in the courts has traditionally been done either by the General Assembly or by this Court under its authority to modify the common law of this State. *Furthermore, the creation of new judicial remedies has traditionally been done on a statewide basis.*
>
> *       *       *       *       *       *
>
> [C]reating a remedy which has traditionally been the sole province of the General Assembly and the Court of Appeals, to combat a statewide problem such as employment discrimination, goes beyond a "matter[ ] of purely local concern."

*McCrory,* 319 Md. at 20, 570 A.2d 834 (emphasis added) (citations omitted).

Although the Court acknowledged that charter counties have concurrent authority to provide administrative remedies that do not conflict with State law, the Court did not say that so long as the administrative remedy does not conflict with State law, it would qualify as a local law. Instead, the *McCrory* Court distinguished *Investors Funding,* stating:

> In *Investors Funding,* the Court took the position that the Express Powers Act, Art. 25A, granted chartered counties the authority to enact *local* laws having the effect of revis-

ing (within the express powers granted) the common law. Nonetheless, the county ordinance upheld in that case provided enforcement remedies of a much more *limited nature* than the cause of action created by § 27–20(a) of the Montgomery County Code. The Court in *Investors Funding* held that § 5(S) of the Express Powers Act granted the Montgomery County Council the authority to enact local legislation regulating the apartment rental business and landlord-tenant relationships within the county. A county commission was granted remedial powers to terminate leases, order repairs, and award *limited damages* to an aggrieved party. Judicial review of the commission's action was authorized.

*McCrory*, 319 Md. at 21–22, 570 A.2d 834 (emphasis added) (citations and footnote omitted).

Implicit in both *McCrory* and *Investors Funding* is the Court's view that a county agency may be vested with the authority to award damages for pecuniary loss resulting from discrimination, when such damages are reasonably quantifiable and relate to identifiable, actual losses. As we see it, the "soft" damages for humiliation and embarrassment authorized by Prince George's County Code § 2–195.01(a)(3), are not readily quantifiable. *See Broward County v. La Rosa*, 505 So.2d 422, 424 n. 5 (Fla.1987) ("We see a significant distinction between administrative awards of quantifiable damages for such items as back rent or back wages and awards for such nonquantifiable damages as pain and suffering or humiliation and embarrassment.").

We noted earlier that the Legislature recently authorized employment discrimination complainants to seek damages pursuant to local law by filing civil actions in court. Md.Code Art. 49B, § 42. We also observe that 1997 Md. Laws Chap. 348, § 4, included a provision regarding Art. 49B, § 42, which states:

[T]his act shall be void if the General Assembly enacts legislation that grants the Maryland Commission on Human Relations jurisdiction over discrimination complaints against

an employer who has one or more employees and that provides for remedies comparable to the remedies provided by this Act, at which time the provisions of this Act shall be abrogated and of no further force and effect.

The Legislature has not, however, authorized the award of damages administratively. As *Makovi* makes clear, the issue of whether damages may be awarded administratively for employment discrimination has been an issue of some debate in the General Assembly. *Makovi,* 316 Md. at 624–26, 561 A.2d 179. Section 4 of 1997 Md. Laws Chap. 348 makes plain that the debate continues.

In our view, whether an administrative agency is authorized to award damages for humiliation and embarrassment for employment discrimination pertains to a matter of statewide concern and, therefore, is within the province of the Legislature. Therefore, we hold that an ordinance that authorizes administrative damages for humiliation and embarrassment as a result of employment discrimination is not a "local law" under Article XI–A of the Maryland Constitution, and thus is not within the power of Prince George's County to enact.

We also note our concern regarding the lack of adequate standards that govern the Commission's exercise of discretion in awarding as much as $100,000 in damages for humiliation and embarrassment. What the Court said in *Investors Funding* with regard to a $1,000.00 civil penalty is pertinent here:

[W]e think the discretion vested in the Commission to fix the amount of the penalty in any amount up to $1,000, for any violation of the Act, in the total absence of any legislative safeguards or standards to guide it in exercising its discretion, constitutes an invalid delegation of legislative powers and otherwise violates due process of law requirements.

* * * * * *

We hold here that because of the complete lack of any legislative safeguards or standards, the grant of unlimited discretion to the Commission to fix civil penalties in any

amount up to $1,000 is illegal. No meaningful judicial review of the Commission's assessment of such penalties would appear possible in light of the unrestricted nature of the discretion sought to be vested in the Commission. *Investors Funding,* 270 Md. at 441–42, 312 A.2d 225.

We recognize that *Investors Funding* has been distinguished as a case in which there were no standards to guide the agency's exercise of discretion. *See, e.g., Montgomery County v. Walsh,* 274 Md. 502, 523–24, 336 A.2d 97 (1975), *appeal dismissed,* 424 U.S. 901, 96 S.Ct. 1091, 47 L.Ed.2d 306 (1976); *Metropolitan Life Ins. Co. v. Insurance Comm'r,* 58 Md.App. 457, 472, 473 A.2d 933, *cert. denied,* 300 Md. 795, 481 A.2d 239 (1984). In this case, the County law authorized the Commission to award damages for humiliation and embarrassment in an amount "to be appropriately and reasonably warranted considering all of the circumstances, but in no event shall the amount be in excess of One Hundred Thousand Dollars ($100,000.00)." Prince George's County Code § 2–195.01(a)(3). Considering the potential amount that the agency has discretion to award, the standards here are, at best, anemic. Given our decision that the provision conflicts with State law and is not a local law, however, we need not further address the adequacy of the standards.

## IV.

Next, we consider appellant's contention that the Commission's award of damages for humiliation and embarrassment, along with the award for back pay, must be vacated because the Commission failed to follow its own rules. Although appellant raised this issue in its complaint to the circuit court, the court did not address the issue in its order.

Rule 12(a) of the Commission's Rules of Procedure states: The hearing Commissioners shall deliberate and reach their decisions in executive sessions. *All decisions of the hearing Panel shall be by majority vote of the Commissioners present and participating in the hearing.* Members of the Panel who disagree with the decision, or the

reasons therefor of the majority, may file a minority report. The majority and/or minority reports shall be presented by Commissioners supportive of the respective viewpoints. *No member of a Panel may vote unless he or she was present at the hearing of the complaint.*

(Emphasis added). Rule 15 provides for the possibility of a rehearing by the Commission. Rule 11, which establishes the procedures for rehearing, states:

Hearings will be chaired by a presiding Commissioner. Testimony taken at all formal hearings shall be under oath. All proceedings shall be recorded and a transcript prepared. The hearings will be guided by but not limited to the following procedures:

\* \* \* \* \* \*

(e) The respondent, or respondent's representative, *shall have the opportunity to present witnesses and exhibits.*

\* \* \* \* \* \*

(g) The respondent, or the respondent's representative, *shall have the opportunity to cross-examine witnesses.*

(Emphasis added).[9]

Appellant argues that the Commission violated its own rules when it awarded back pay and damages for embarrassment and humiliation, because the commissioners who made the awards following partial rehearing did not actually

---

9. Appellant does not contest the hearing panel's finding of retaliatory discrimination based on a violation of Rule 12(a). Indeed, when two members of the hearing panel were replaced on December 19, 1995, appellant was asked if it objected; Beretta did not object.

We pause, however, to observe that it appears that the length of time that it took the Commission to conduct the hearings resulted in the turnover in composition of the hearing panel. We recognize that the panel members may have been volunteers, with limitations on their availability. Nevertheless, we are at a loss to understand why it took sixteen months to conduct a total of seven sessions of hearings. Had this matter been handled more expeditiously—and we have no indication that it could not have been—it is likely that each of the panel members who heard the testimony could have decided each issue in this case.

hear the testimony. Appellant contends that the hearing panel that heard the testimony of the witnesses should have determined the amount of the awards. Alternatively, appellant argues that the Commission, at the partial rehearing, should have taken testimony on the issue of back pay and damages. Because it failed to do so, appellant asserts that the commissioners at the partial rehearing improperly determined facts supporting a finding of "humiliation and embarrassment," and assessed damages of $20,000 and back pay of $37,690.80, without having heard the testimony on which their awards were based.

Having concluded that the Commission had no authority to award humiliation and embarrassment damages, *see supra* Parts II and III, we need only decide here whether the Commission violated its own rules with regard to its award of back pay. We conclude that it did. We note, further, that even if we did not invalidate Prince George's County Code § 2–195.01(3) on the grounds of preemption by conflict, we would remand as to those damages because of the Commission's failure to comply with its own rules.

■ The "*Accardi* doctrine," which derives from United States *ex rel Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954), is well established; indeed, it "is alive and well in Maryland." *Board of Educ. v. Ballard,* 67 Md.App. 235, 240, 507 A.2d 192 (1986). The doctrine provides that "rules and regulations promulgated by an administrative agency cannot be waived, suspended or disregarded...." *Hopkins v. Maryland Inmate Grievance Comm'n,* 40 Md.App. 329, 335, 391 A.2d 1213 (1978). Consistent with the doctrine, " '[a]n agency of the government must scrupulously observe rules, regulations or procedures which it has established. When it fails to do so, its action cannot stand and courts will strike it down.' " *Id.* at 335–36, 391 A.2d 1213 (quoting *United States v. Heffner,* 420 F.2d 809, 811 (4th Cir.1969)).

Our decision in *Prince George's County v. Zayre Corp.,* 70 Md.App. 392, 401, 521 A.2d 779 (1987), a case involving the Commission and Rule 12(a), is on point. In *Zayre,* the

Commission sought to enforce an order against the employer, Zayre Corp., which contested the order and sought to exercise its right to present additional evidence in the circuit court. After hearing Zayre's additional evidence, the circuit court remanded the case to the Commission to evaluate its conclusions in light of all of the evidence before it, including the evidence originally presented before the Commission as well as the evidence presented to the circuit court. In the interim, however, the composition of the hearing panel had changed entirely since the first hearing. On remand, the second panel relied on the written transcripts of the hearing before the original panel, as well as the transcripts of the circuit court testimony. The second panel also declined Zayre's request to conduct a *de novo* hearing. We reversed, holding that the second panel violated Rule 12(a) when it limited its review to the transcript testimony. In so holding, we observed that Rule 12(a) conferred upon Zayre a "fundamental procedural right of having the trier of fact assess the credibility of the witnesses." *Zayre,* 70 Md.App. at 401–02, 521 A.2d 779. We believe that no less is required here.

Appellee attempts to distinguish *Zayre.* Mr. Santos contends that, unlike *Zayre,* the case *sub judice* only involves the computation of damages and back pay. He asserts that the decision to award damages and back pay had already been decided, so that the full Commission merely had to calculate the amount of the award. Therefore, appellee insists that the strict adherence to Rule 12(a) that we applied in *Zayre* is not applicable here. We are unpersuaded by appellee's argument.

Admittedly, the credibility of witnesses would not appear to play as significant a role in the calculation of back pay as it would for embarrassment and humiliation damages. Nevertheless, among the factors involved in calculating monetary relief is the extent to which a complainant has mitigated his lost wages by finding subsequent employment. The testimony before the hearing panel clearly indicated that Mr. Santos held several jobs after being terminated from Beretta—some for short periods of time—and appellant's counsel questioned Mr. Santos extensively about his subsequent employment.

Although some documentary evidence regarding Mr. Santos's mitigation was submitted to the Commission, it did not completely address Mr. Santos's reasons for leaving certain jobs. It is also apparent that Mr. Santos's memory as to his subsequent employment, his pay level at those jobs, and his reasons for leaving the subsequent employment were material to any determination of mitigation.

Appellant argues that Mr. Santos held several other jobs following his termination from Beretta and that his right to back pay ended when he either quit or was fired from those jobs. Appellee admits that Mr. Santos's mitigation efforts "are impossible to determine from the record because Mr. Santos' memory is spotty, but it appears that the [Commission] made some adjustment." Thus, appellee concedes that it is not possible to determine how the Commission reached the award of $37,690.80 in back pay. Instead, appellee posits: "In a sense, since the HRC didn't display its exact calculation, it is possible that the instances Beretta brings up [of Santos's failure to mitigate] have already been factored into the calculation."

At the rehearing, the parties were not permitted to present additional testimony, although they were permitted to introduce documents clarifying some of Mr. Santos's testimony. Thereafter, the Commission explained its decision awarding damages and back pay as follows:

> The Commission, as a result of the partial re-hearing held on August 26, 1996 found that the Complainant had attempted to mitigate his damages, through employment and unemployment compensation, resulting from his involuntary separation from Beretta. However, his employment and unemployment compensation was not equal to the compensation he would have received had he not been separated from Beretta.
>
> **Decision on Damages**
>
> The Commission finds that the Complainant has suffered a loss of wages, embarrassment and humiliation. Based on

these findings, the Commission orders the Respondent to pay the Complainant damages as outlined below:

| | |
|---|---|
| Lost Wages | $37,690.80 |
| Embarrassment and Humilia-tion | $20,000.00 |
| TOTAL | $57,690.80 |

Mr. Santos's credibility was surely an important factor to be considered in awarding back pay. Even if Beretta produced no evidence regarding Mr. Santos's mitigation efforts, the finder of fact need not have believed Mr. Santos's testimony. In our view, the failure of even a single commissioner to hear Mr. Santos's testimony and assess his credibility raises serious concerns about the validity and fairness of the Commission's ultimate decision to award back pay of $37,690.80. Because we cannot say that appellant was not prejudiced by the Commission's failure to follow its own rules, *see Jacocks v. Montgomery County,* 58 Md.App. 95, 107, 472 A.2d 485 (1984), we must remand for rehearing on this issue.

**ORDER OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY REVERSED AS TO AWARD OF DAMAGES AND VACATED AS TO AWARD FOR BACK PAY. CASE REMANDED TO THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY WITH INSTRUCTIONS TO REMAND TO THE COMMISSION FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID 50% BY APPELLANT, 50% BY APPELLEE.[10]**

---

10. In view of our comments in Footnote 1, we direct the Commission to pay appellee's costs.