718 A.2d 648

BROADCAST EQUITIES, INC.

v.

MONTGOMERY COUNTY, Maryland et al.

No. 1861, Sept. Term, 1997.

Court of Special Appeals of Maryland.

Oct. 2, 1998.

366

368

David N. Ventker (John C. Lynch and Huff, Poole & MaHoney, P.C., on the brief), Virginia Beach, VA, for appellant.

Judson P. Garrett, Jr. (Karen L. Federman Henry, on the brief), Rockville, for appellees.

Argued before MURPHY, C.J., and HOLLANDER and EYLER, JJ.

HOLLANDER, Judge.

In this appeal, Broadcast Equities, Inc. ("BEI"), appellant, lodges a broad challenge to the legality of Chapter 27 of the Montgomery County Code, entitled Human Relations and Civil Liberties. In particular, BEI focuses on those provisions that deal with discrimination in employment.

On August 28, 1996, appellant filed a complaint in the Circuit Court for Montgomery County seeking a declaratory judgment that Montgomery County Code § 27 *et seq.* violates the United States Constitution, the Maryland Constitution, and 42 U.S.C. § 1983. The defendants below, who are appellees in this case, are: Montgomery County (the "County"); the Montgomery County Human Relations Commission (the "Commission"); the Hearing Panel for the Commission; the Hearing Examiner, Philip Tierney; the Montgomery County Attorney, Charles W. Thompson; and David E. Stevenson, an Assistant Montgomery County Attorney. Appellees answered the complaint and subsequently moved for summary judgment. Appellant then moved for partial summary judgment. After a hearing on both motions, the court granted appellees' motion for summary judgment and denied appellant's motion for partial summary judgment. Appellant noted a timely appeal and presents a plethora of questions, which we have reordered:

I. DID THE TRIAL COURT ERR IN FAILING TO DECLARE THAT SECTIONS 27–17 THROUGH 27–26 OF THE MONTGOMERY COUNTY CODE ARE NOT "LOCAL LAWS" UNDER ARTICLE XI–A OF THE MARYLAND CONSTITUTION?

II. DID THE TRIAL COURT ERR IN FAILING TO DECLARE THAT SECTIONS 27–17 THROUGH 27–26 OF THE MONTGOMERY COUNTY CODE VIOLATE THE HOME RULE PROVISION OF THE MARYLAND CONSTITUTION?

III. DID THE TRIAL COURT ERR IN FAILING TO DECLARE THAT MONTGOMERY COUNTY

CODE SECTIONS 27–17 THROUGH 27–26 CON-
FLICT WITH MARYLAND LAW?

IV. DID THE TRIAL COURT ERR IN FAILING TO
DECLARE THAT MONTGOMERY COUNTY
HAS CREATED A PRIVATE RIGHT OF AC-
TION WHERE NONE EXISTS?

V. DID THE TRIAL COURT ERR IN FAILING TO
DECLARE THAT THE MONTGOMERY COUN-
TY CODE CANNOT BE ENFORCED RETROAC-
TIVELY AGAINST BEI?

VI. DID THE TRIAL COURT ERR IN FAILING TO
DECLARE THAT MONTGOMERY COUNTY'S
ATTEMPTS TO ENFORCE CHAPTER 27 OF
THE MONTGOMERY COUNTY CODE AGAINST
BEI VIOLATE BEI'S CONSTITUTIONAL
RIGHT TO EQUAL PROTECTION OF THE
LAWS?

VII. DID THE TRIAL COURT ERR IN RULING
THAT BEI IS REQUIRED TO EXHAUST ITS
ADMINISTRATIVE REMEDIES PRIOR TO
CHALLENGING THE VALIDITY OF CHAPTER
27 OF THE MONTGOMERY COUNTY CODE
AND PRIOR TO CLAIMING VIOLATIONS UN-
DER 42 U.S.C. § 1983 AND THE FIFTH AND
FOURTEENTH AMENDMENTS OF THE UNIT-
ED STATES CONSTITUTION?

VIII. DID THE TRIAL COURT ERR IN RULING
THAT BEI'S CLAIMS UNDER 42 U.S.C. § 1983
AND THE UNITED STATES CONSTITUTION
ARE NOT RIPE FOR JUDICIAL REVIEW?

We shall answer questions I, II, IV, V, VI, VII, and VIII in
the negative and question III in the affirmative. Therefore,
for the reasons that follow, we shall reverse in part and affirm
in part.

## Factual Background

BEI, a Virginia corporation, is a subsidiary of the Christian Broadcasting Network ("CBN"). Between January 1990 and January 1993, BEI operated a radio station in Silver Spring under the name of WNTR Radio ("WNTR"). In January 1990, WNTR employed Richard J. Mangus as a senior producer and as an "on call" control board operator. Mangus's employment at WNTR ended on November 29, 1990. The facts and circumstances of Mangus's departure from WNTR are the subject of intense dispute. On October 1, 1991, almost a year after his departure from WNTR, Mangus filed a Complaint of Alleged Discrimination in Employment with the Commission, stating: "I believe I was discriminated against and my employment terminated based on my sexual orientation (homosexual)." BEI, on the other hand, contends that Mangus resigned.

On October 24, 1991, the Commission notified BEI of Mangus's complaint. In its response of March 24, 1992, BEI denied any discrimination by either BEI or WNTR.[1] Appellant asserted in its response that WNTR's personnel records, including those pertaining to Mangus's employment, were destroyed in a fire at the radio station on February 28, 1991.[2]

On October 26, 1992, BEI contracted to sell WNTR to Capital Kids Radio, Inc., a Maryland corporation. That sale became final on or about January 29, 1993.

Almost three years after Mangus filed his complaint with the Commission, its investigator informed BEI, by letter dated August 23, 1994, that the investigation was nearing completion and that the evidence gathered up to that point was "leading to a finding of reasonable grounds to believe

---

1. It is unclear why BEI waited five months to issue a formal response to Mangus's complaint. It appears, however, that there were informal communications between BEI and the Commission prior to BEI's formal response.

2. In its Brief to this Court, appellant stated that the fire occurred in March 1992.

discrimination occurred in the termination of [Mangus's] employment." The letter also invited BEI to provide additional evidence and requested that BEI contact the Commission if it was interested in exploring a negotiated settlement. By letter dated September 14, 1994, BEI responded, through CBN's associate general counsel. In its letter, BEI stated that its files indicated that there had been no contact with the Commission regarding the case for more than two and a half years, and that BEI had "presumed that this investigation was terminated long ago." In addition, BEI stated that it would not explore a negotiated settlement until the Commission provided BEI with evidence of the alleged discrimination. In a reply letter dated September 27, 1994, the Commission's investigator indicated that much of the evidence was provided by witnesses to conversations and remarks by WNTR's management.

On March 23, 1995, the Commission's acting executive director issued a written determination that the record supported Mangus's allegation of discrimination based on sexual orientation and that reasonable grounds existed to believe that BEI had engaged in an unlawful employment practice, as defined in the County Code. Subsequent conciliation efforts were unsuccessful and, on January 17, 1996, the Commission's executive director certified the March 23, 1995, determination for public hearing.

Accordingly, on May 14, 1996, the County Attorney filed a Statement of Charges, which included a prayer for relief, seeking either (1) reinstatement at a radio station owned by CBN, and back pay retroactive to December 1, 1990 or (2) back pay, retroactive to December 1, 1990, in the amount of $134,592.24. In addition, the Statement of Charges sought damages for humiliation and embarrassment in the amount of $1,000.00, and "such other affirmative or prospective relief as, in the judgment of the Panel, is necessary to effectuate the purposes of the Law, or is deemed necessary to eliminate the effects of the discriminatory practice or practices found to have been committed in this case."

On May 17, 1996, the Commission's Office of Zoning and Administrative Hearings issued a notice that public hearings on the case would begin on September 23, 1996. That notice spawned BEI's complaint for declaratory relief, filed on August 28, 1996. The administrative hearing was stayed pending resolution of the declaratory action.

In its complaint for declaratory relief, appellant sought a declaration that enforcement of Chapter 27 of the County Code against BEI: (1) violated BEI's rights to Due Process and Equal Protection under the federal Constitution; (2) violated 42 U.S.C. § 1983; (3) was "unconstitutional under the Constitution of the State of Maryland"; and (4) violated BEI's rights to freedom of association, freedom of religion, and freedom of speech under the United States Constitution. In addition, BEI sought a permanent injunction barring appellees from proceeding against BEI, and a temporary injunction to prevent the Commission from holding the hearing scheduled for September 23, 1996. The complaint also sought attorney's fees, costs, and other relief.

Appellees answered the complaint and, on June 30, 1997, they filed a motion for summary judgment, seeking a declaration that the applicable County Code provisions are valid and a dismissal of appellant's complaint. On July 18, 1997, appellant filed a motion for partial summary judgment, again requesting a declaration that certain provisions of Chapter 27 violate the Maryland Constitution and an injunction barring appellees from proceeding against BEI in any administrative hearing.

After the trial court held argument on the parties' respective motions on October 22, 1997, it granted appellees' motion and denied appellant's motion. On November 3, 1997, the court issued a Final Declaratory Judgment and Order that stated, in pertinent part:

The Court agrees with [appellees] that at this stage of proceedings all claims except [appellant's] challenge on its face to the validity of the employment discrimination provisions in Chapter 27 of the Montgomery County Code, § 27–

17 et seq., are premature. As to all claims under Maryland law other than the facial challenge, plaintiff must exhaust administrative remedies before seeking judicial relief. As to all federal claims, including the claims under 42 U.S.C. § 1983, the Court finds that they are not ripe for judicial review, as [appellant] has not been denied any property right or liberty interest protected by the Constitution and laws of the United States.

The Court further agrees, for the reasons stated by [appellees], that [appellant's] facial challenge to the validity of the employment discrimination laws must be denied. [Appellant] has not shown that the challenged laws are not authorized by Article XI-A of the Maryland Constitution or by the Express Powers Act, Art. 25A, Md.Code Ann., and [appellant] has not shown that the challenged laws are inconsistent with or in conflict with any public general law of Maryland.

[Appellant's] request for injunctive relief as to all claims is therefore DENIED.

[Appellant's] request for a declaratory judgment that Montgomery County's employment discrimination laws, § 27–17 et seq., Montgomery County Code, are invalid is hereby DENIED, and the Court DECLARES that these laws are not invalid or unenforceable because they are not authorized by the Maryland Constitution or the Express Powers Act or are inconsistent with or in conflict with the public general laws of Maryland.

We will include additional facts in our discussion.

## Discussion

### A. Introduction

Chapter 27 of the Montgomery County Code is a comprehensive statutory scheme aimed at eliminating discrimination in the County in the areas of employment, housing, and public accommodation. Section 27–1 sets forth a statement of public policy; §§ 27–2 through 27–6 establish the Commission and the duties and membership requirements of the agency and its

personnel; § 27–6A is a general definitions section; and § 27–7 provides for administration and enforcement, including the filing of complaints, investigation, conciliation, hearings, decisions, and available relief. Sections 27–17 through 27–26 cover discrimination in employment as follows: § 27–17 (Declaration of policy); § 27–18 (Definitions); § 27–19 (Unlawful employment practices); § 27–20 (Rights of complainant; civil action by county attorney); § 27–21 (Procedure for complaints against county); § 27–22 (Notice to be posted; reports and records); § 27–23 (Reports and records of person being investigated, etc.); § 27–24 (Action against licensee, etc., found in violation of division); § 27–25 (Penalties and monetary awards); § 27–26 (Standards of proof).

Appellant's challenge includes both a broad assertion that the entire statutory scheme is unconstitutional as well as specific challenges to particular provisions of the County Code. Before analyzing appellant's claims, we must first consider the applicable standard of review.

### B. Standard of Review

Under the Declaratory Judgment Act, Md.Code (1974, 1995 Repl.Vol.), § 3–409 of the Courts and Judicial Proceedings Article ("C.J."), a court may grant a declaratory judgment

if it will serve to terminate the uncertainty or controversy giving rise to the proceeding, and if:

(1) An actual controversy exists between contending parties;

(2) Antagonistic claims are present between the parties involved which indicate imminent and inevitable litigation; or

(3) A party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who also has or asserts a concrete interest in it.

(b) *Special form of remedy provided by statute.*—If a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle.

Thus, when an administrative remedy is statutorily directed, the administrative remedy must ordinarily be exhausted before resorting to court action. *See generally Zappone v. Liberty Life Ins. Co.*, 349 Md. 45, 60–66, 706 A.2d 1060 (1998) (explaining that exhaustion requirements depend upon extent of administrative remedies afforded by statute); *see also Holiday Point Marina Partners v. Anne Arundel County*, 349 Md. 190, 198–204, 707 A.2d 829 (1998); *Abington Center Assocs. v. Baltimore County*, 115 Md.App. 580, 592–93, 694 A.2d 165 (1997). Nevertheless, so long as an administrative remedy is not deemed to be "exclusive," but instead is either "primary" or "concurrent," the Court has recognized an exception to the exhaustion requirement when a party asserts a facial constitutional challenge to the validity of a statute. *See Holiday Point*, 349 Md. at 201, 707 A.2d 829; *Insurance Comm'r v. Equitable Life Assur. Soc'y*, 339 Md. 596, 620–24, 664 A.2d 862 (1995). "[T]he 'constitutional exception' ... permits a judicial determination without administrative exhaustion when there is a direct attack upon the power or authority (including whether it was validly enacted) of the legislative body to adopt the legislation from which relief is sought." *Harbor Island Marina, Inc. v. Board of County Comm'rs*, 286 Md. 303, 308, 407 A.2d 738 (1979); *see also Holiday Point*, 349 Md. at 201–02, 707 A.2d 829; *Equitable Life*, 339 Md. at 621, 664 A.2d 862. On the other hand, if the statutory remedy is "exclusive," exhaustion is required, even if the declaratory action presents a facial constitutional challenge. *Holiday Point*, 349 Md. at 203, 707 A.2d 829; *Equitable Life*, 339 Md. at 623, 664 A.2d 862. As the Court of Appeals explained in *Zappone*, "sometimes opinions in this area seem to use the word 'exclusive' when the court actually means 'primary.'" *Zappone* 349 Md. at 63 n. 7, 706 A.2d 1060.

Montgomery County Code § 27–7(g) provides for judicial review:

*Appeal.* Any person aggrieved by a subsection (f) of section 27–7 decision and order may appeal to the circuit court [sic] for Montgomery County for review of such action pursuant

to chapter 1100, subtitle B, of the Maryland Rules of Procedure.[3]

A § 27–7(f) decision and order is one made by the hearing panel.

■ It is uncontroverted that appellant has not exhausted its administrative remedies. The parties agree, however, that this case falls within the narrow exception regarding a facial constitutional challenge. We note that the Court of Appeals has reviewed a facial State constitutional challenge to the Prince George's County anti-employment discrimination ordinance under the constitutional exception without exhaustion of remedies. *See National Asphalt Pavement Ass'n v. Prince George's County,* 292 Md. 75, 77 n. 2, 437 A.2d 651 (1981); *see also County Council v. Investors Funding Corp.,* 270 Md. 403, 312 A.2d 225 (1973) (involving facial constitutional challenge to Montgomery County "Fair Landlord–Tenant Relations" ordinance even though no enforcement action was involved); *Board of County Comm'rs v. Schuhly,* 72 Md.App. 702, 708–09, 532 A.2d 716 (1987) (explaining that a facial constitutional attack would be available, without exhaustion of administrative remedies, to challenge a zoning statute that provided for judicial review under the former B Rules), *cert. denied,* 311 Md. 719, 537 A.2d 273 (1988). Accordingly, because there is no express statutory language in the County Code indicating that the B Rules provide the exclusive remedy here, we will consider appellant's facial constitutional challenge.

■ In addition, exhaustion of administrative remedies is not required before we can consider appellant's due process claims based upon the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. *See Felder v. Casey,* 487 U.S. 131, 146–47, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988); *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct.

---

**3.** The B Rules were rescinded effective July 1, 1993. Those rules, which govern judicial review of administrative actions, now appear, without substantive change, in Title 7, Chapter 200 of the Maryland Rules. *County Council v. Offen,* 334 Md. 499, 504 n. 2, 639 A.2d 1070 (1994).

2557, 73 L.Ed.2d 172 (1982); *Maryland Reclamation Assocs. v. Harford County*, 342 Md. 476, 492–93, 677 A.2d 567 (1996); *Maryland–Nat'l Capital Park & Planning Comm'n v. Crawford*, 307 Md. 1, 12–14, 511 A.2d 1079 (1986). We shall consider appellant's federal claims in Part VIII of our opinion.

## C. The Express Powers Act

■■■ Montgomery County is a charter home rule county pursuant to Article XI–A of the Maryland Constitution, which is known as the Home Rule Amendment. *McCrory Corp. v. Fowler*, 319 Md. 12, 16, 570 A.2d 834 (1990). The Home Rule Amendment "does not confer legislative powers directly upon the charter counties." *Beretta U.S.A. Corp. v. Santos*, 122 Md.App. 168, 186, 712 A.2d 69 (1998). The Court said in *Ritchmount Partnership v. Board of Supervisors*, 283 Md. 48, 56, 388 A.2d 523 (1978) that Art. XI–A "does not constitute a grant of absolute autonomy to local governments." *See also McCrory*, 319 Md. at 17, 570 A.2d 834; *Beretta*, 122 Md.App. at 187, 712 A.2d 69. Instead, Section 2 of Article XI–A requires the General Assembly to adopt legislation delegating express powers to the charter counties. *See Ritchmount*, 283 Md. at 57, 388 A.2d 523; *Beretta*, 122 Md.App. at 186, 712 A.2d 69.

■■■ In 1918, in response to the constitutional directive of the Home Rule Amendment, the General Assembly enacted the Express Powers Act, which is now codified at Md.Code (1957, 1996 Repl.Vol., 1997 Cum.Supp.), Art. 25A. *See Prince George's County v. Board of Supervisors*, 337 Md. 496, 503–04, 654 A.2d 1303 (1995); *McCrory*, 319 Md. at 16–17, 570 A.2d 834; *Eastern Diversified Properties, Inc. v. Montgomery County*, 319 Md. 45, 49–50, 570 A.2d 850 (1990); *Board of Election Laws v. Talbot County*, 316 Md. 332, 344, 558 A.2d 724 (1988); *Cheeks v. Cedlair Corp.*, 287 Md. 595, 600 & n. 2, 415 A.2d 255 (1980); *County Comm'rs v. Supervisors of Elections*, 192 Md. 196, 204, 63 A.2d 735 (1949). Section 5 of the Express Powers Act recognizes the authority of a charter home rule county and Baltimore City to enact local ordinances to maintain "the peace, good government, health and welfare

of the county," Md.Code, Art. 25A, § 5(S), and gives charter counties and Baltimore City "a wide array of legislative and administrative powers over local affairs." *Ritchmount,* 283 Md. at 57, 388 A.2d 523; *see also Beretta,* 122 Md.App. at 186, 712 A.2d 69. Thus, the charter counties have concurrent authority to enact ordinances aimed at eradicating employment discrimination. *See National Asphalt,* 292 Md. at 80–81, 437 A.2d 651; *McCrory,* 319 Md. at 20, 570 A.2d 834. Nevertheless, that broad grant of authority "cannot authorize a county to enact an ordinance that is not a 'local law' under Article XI–A of the Constitution." *McCrory,* 319 Md. at 22 n. 3, 570 A.2d 834.

■ "[A] local law, 'in subject matter and substance' is 'confined in its operation to prescribed territorial limits . . . .' A general law, on the other hand, ' "deals with the general public welfare, a subject which is of significant interest not just to any one county, but rather to more than one geographical subdivision, or even to the entire state." ' " *Id.* at 18, 570 A.2d 834 (quoting *Steimel v. Board of Election Supervisors,* 278 Md. 1, 5, 357 A.2d 386 (1976) (quoting *Cole v. Secretary of State,* 249 Md. 425, 435, 240 A.2d 272 (1968))).

"In prohibiting the General Assembly from enacting public local laws for Baltimore City and charter home rule counties on subjects covered by the Express Powers Act, Section 4 of Article XI–A states that '[a]ny law so drawn as to apply to two or more of the geographical subdivisions of this State shall not be deemed a Local Law, within the meaning of this Act.' " *McCrory,* 319 Md. at 17, 570 A.2d 834. Other than this limitation, Article XI–A does not attempt to define the distinction between a local law and a general law. Instead, that question is left to the " 'application of settled legal principles to the facts of particular cases in which the distinction may be involved.' " *Id.* (quoting *Dasch v. Jackson,* 170 Md. 251, 260, 183 A. 534 (1936)).

BEI maintains that, before 1995, there was no express authority for counties to enact laws relating to employment discrimination. Thus, appellant maintains that, at the relevant

time, §§ 27–17 through 27–26 of the County Code violated the Home Rule Amendment and the Express Powers Act. Appellant's argument is without merit.

In 1995, the General Assembly amended the Express Powers Act regarding the charter counties' authority to address employment discrimination. 1995 Md. Laws Chap. 278. The Act now provides, in pertinent part:

> The following enumerated express powers are granted to and conferred upon any county or counties which hereafter form a charter under the provisions of Article XI–A of the Constitution, that is to say:

> (A) *Local Legislation*

> \* \* \* \*

> (4) To provide for the enforcement of local employment discrimination laws or public accommodations discrimination laws by fines or penalties that do not exceed $5,000 for any offense.

Md.Code, Art. 25A, § 5(A).

The express purpose of the 1995 amendment is

> to increase the maximum penalty that a charter county may impose under local laws relating to employment discrimination or in public accommodations; making stylistic changes; and generally relating to authorized penalties under local discrimination laws enacted by counties with charter home rule.

1995 Md. Laws Chap. 278.

 In 1981, however, the Court observed in *National Asphalt* that the General Assembly did not preempt the field of employment discrimination. To the contrary, it acknowledged that the charter counties are permitted to enact legislation on the subject. *National Asphalt,* 292 Md. at 79–81, 437 A.2d 651; *see also McCrory,* 319 Md. at 20, 570 A.2d 834. Indeed, such authority is an exercise of the County's police power under Art. 25A § 5(S). *See Investors Funding,* 270 Md. at 440–41, 312 A.2d 225 (upholding county ordinance

authorizing money damages, civil penalties, and other remedial relief for violation of landlord-tenant ordinance); *Montgomery Citizens League v. Greenhalgh*, 253 Md. 151, 160–61, 252 A.2d 242 (1969) (explaining that county's authority to enact housing ordinance that prohibited discrimination based upon race was a valid exercise of police power under Art. 25A § 5(S)); *Holiday Universal Club v. Montgomery County*, 67 Md.App. 568, 573–74, 508 A.2d 991 (same, regarding discrimination in public accommodations), *cert. denied*, 307 Md. 260, 513 A.2d 314 (1986), *appeal dismissed*, 479 U.S. 1049, 107 S.Ct. 920, 93 L.Ed.2d 973 (1987); *see also Beretta*, 122 Md. App. at 194, 712 A.2d 69 (discussing powers under Art. 25A, § 5(S)). Therefore, there is no merit to appellant's argument that, prior to 1995, County Code §§ 27–17 through 27–26 violated the Express Powers Act.

## D. *McCrory* and Its Progeny

Relying on *McCrory*, 319 Md. at 12, 570 A.2d 834, appellant broadly asserts that County Code §§ 27–17 through 27–26 are not local laws and are therefore invalid. *McCrory* involved a certified question from the federal district court concerning County Code § 27–20(a). That provision authorized private civil actions in circuit court for unlimited money damages due to violations of the County's anti-discrimination ordinance. The Court held that § 27–20(a) was not a local law and was, therefore, unconstitutional. *McCrory*, 319 Md. at 24, 570 A.2d 834. Appellant thus argues that the County's entire employment discrimination law was invalidated by *McCrory*. Appellant also contends that both this Court in *Gunpowder Horse Stables, Inc. v. State Farm Automobile Insurance Co.*, 108 Md.App. 612, 673 A.2d 721 (1996), and the federal district court in *Weathersby v. Kentucky Fried Chicken National Management Co.*, 804 F.Supp. 756 (D.Md.1992), *aff'd*, 16 F.3d 414 (4th Cir.1994), interpreted *McCrory* as invalidating the County's employment discrimination law. We disagree with appellant's contentions.

*McCrory* acknowledged that the field of employment discrimination has not been preempted by the State, and it

expressly limited its holding to § 27–20(a) of the County Code. The Court said:

> We hold, therefore, that an ordinance attempting to combat employment discrimination by creating a new private judicial cause of action is not a "local law" under Article XI–A of the Maryland Constitution, and thus is not within the power of Montgomery County to enact.

319 Md. at 24, 570 A.2d 834.[4]

In *Gunpowder*, a motorist was injured in an automobile accident involving the defendant's horses, which had escaped onto the highway. The sole basis of liability was a Baltimore County ordinance which, with certain exceptions, created a form of absolute liability on the owners of animals. The ordinance did not require the owner's knowledge of the animal's propensities. Thus, "[t]he burden of proof . . . [was] less rigorous than under common law negligence or strict liability. In sum, [the ordinance] create[d] an alternative and new cause of action." *Id.* at 626, 673 A.2d 721.

We then analyzed the ordinance in light of *McCrory* and declared that it was not a local law, because it created a "theory of liability not recognized by the General Assembly or the common law." *Gunpowder*, 108 Md.App. at 633, 673 A.2d 721. In our discussion of *McCrory*, we observed that the issue in that case involved a *section* of the County Code that permitted a private citizen to bring an action in the circuit court for unlimited money damages. We explained:

> The Court [in *McCrory* ] declared that in Maryland, "the creation of new causes of action in the courts has traditionally been done either by the General Assembly or by this Court under its authority to modify the common law of this

---

4. In response to *McCrory*, the Legislature in 1993 enacted Art. 49B, § 42, which authorized civil actions for violations of Montgomery County's anti-employment discrimination laws. 1992 Md. Laws Chap. 555. That provision has since been amended to permit similar civil actions for violations of anti-employment discrimination laws in Howard and Prince Georges counties. 1993 Md. Laws Chap. 152. In addition, the Legislature has provided for similar actions in Baltimore County. Art. 49B, § 43; *see* 1997 Md. Laws Chap. 348.

State." The Court went on to add that "the creation of new judicial remedies has traditionally been done on a statewide basis." Because, the Court reasoned, employment discrimination was a statewide problem, the county anti-discrimination ordinance "affect[ed] 'matters of significant interest to the entire state' and c[ould not] qualify as a 'local law' under Article XI–A."

*Id.* at 632, 673 A.2d 721 (quoting *McCrory*, 319 Md. at 19–20, 570 A.2d 834) (citations omitted).

In our view, appellant has taken *Gunpowder's* analysis of *McCrory* out of context. It is clear from our discussion in *Gunpowder* that we merely observed that *McCrory* invalidated the provision permitting private citizens to bring private causes of action in the circuit court and to obtain unlimited damages for violation of the anti-employment discrimination ordinance. As we have already discussed, *McCrory* did not invalidate the entire antidiscrimination ordinance.

Similarly, appellant's reliance on *Weathersby* is unavailing. *Weathersby* actually involved two cases. One was a state court action that concerned, *inter alia,* alleged violations of the Montgomery County ordinance at issue here. *See Weathersby v. Kentucky Fried Chicken Nat'l Management Co.,* 86 Md.App. 533, 587 A.2d 569 (1991) *("Weathersby I"), rev'd on other grounds,* 326 Md. 663, 607 A.2d 8 (1992). The other case involved a federal employment discrimination claim that was adjudicated in the federal district court. *Weathersby,* 804 F.Supp. at 756 *("Weathersby II").* In *Weathersby I,* the appellant appealed the dismissal of one count of her complaint that was based upon the Montgomery County ordinance. Between the time of trial and the appeal, the Court of Appeals decided *McCrory.* Accordingly, on appeal, we held that the appellant's claim on that count was not viable because, under *McCrory,* she was not permitted to bring a private cause of action in the circuit court for a violation of Montgomery County's anti-discrimination ordinance. *Weathersby I,* 86 Md. App. at 550–51, 587 A.2d 569.

Subsequently, in its recitation of the facts in *Weathersby II*, the federal district court discussed the result in *Weathersby I*. BEI seizes upon a passage from *Weathersby II* to support its argument that *McCrory* invalidated the entire County ordinance at issue here. Appellant quotes the following text from the decision in *Weathersby II*:

> Section 27–19(a) of the Montgomery County Code makes it an unlawful employment practice for an employer to discriminate against any individual because of the individual's race, color, religious creed, ancestry, national origin, age, sex, marital status, handicap or sexual orientation. Section 27–19(b) prohibits an employer from retaliating against any person on account of that person's lawful opposition to a violation of, *inter alia*, section 27–19(a). Section 27–20(a) creates a private right of action in favor of any person who has been subjected to an act of discrimination outlawed by the Montgomery County civil rights law.

> In affirming the circuit court's dismissal of Count II (reprisal), the Court of Special Appeals did not reach the merits because the statute on which that claim was based had been struck down as unconstitutional by the Court of Appeals of Maryland, the state's highest court, during the pendency of Weathersby's appeal. *See McCrory Corp. v. Fowler*, 319 Md. 12 570 A.2d 834 (1990) (finding Montgomery County anti-discrimination ordinance unconstitutional because not a "local law" and therefore *ultra vires* as exceeding authority of Montgomery County Council).

*Weathersby II*, 804 F.Supp. at 759.

Curiously, appellant neither cites nor discusses this Court's opinion in *Weathersby I*. Instead, appellant relies on a factual recitation of the procedural history of the state case, which was not even decided in the federal court action. In this Court's opinion in *Weathersby I*, we observed:

> Thus, the Court [in *McCrory*] held that enactment of the [Montgomery County] ordinance violated the Express Powers Act. *In effect, § 27–20(a) was declared a nullity and it*

*could not provide the basis for a cause of action for reprisal under § 27-19(b).*

*Weathersby I,* 86 Md.App. at 550, 587 A.2d 569 (emphasis added). Thus, we did not state in our opinion in *Weathersby I* that *McCrory* invalidated the entire anti-employment discrimination ordinance. Instead, as the above-quoted passage makes clear, *McCrory* merely invalidated § 27-20(a), which authorized private parties to file a private cause of action in the circuit court. Appellant's reliance on the federal court's factual rendition in *Weathersby II* of our opinion in *Weathersby I* is out of context and unpersuasive. Contrary to appellant's assertions, no court has held that *McCrory* invalidated the entire Montgomery County anti-employment discrimination ordinance.

Appellant argues in the alternative that, even if *McCrory* only invalidated § 27-20, the County Code cannot be enforced against BEI because it did not contain a severability clause. We reach a different conclusion.

 The question of whether an invalidated provision is severable is a question of legislative intent. *Sugarloaf Citizens Assoc. v. Gudis,* 319 Md. 558, 573-74, 573 A.2d 1325 (1990). There is a strong presumption that a legislative body intends its enactments to be severed, if possible. *Id.* at 574, 573 A.2d 1325; *State v. Burning Tree Club, Inc.,* 315 Md. 254, 297, 554 A.2d 366, *cert. denied,* 493 U.S. 816, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989). In determining whether the provision is severable, we ask: "[W]hat would have been the intent of the legislative body, if it had known that the statute could be only partially effective." *Turner v. State,* 299 Md. 565, 576, 474 A.2d 1297 (1984); *see also Sugarloaf,* 319 Md. at 574, 573 A.2d 1325. We recognize that the Montgomery County Council has adopted a general severability provision for all of its legislation. *See* Montgomery County Code § 1-202 (proclaiming that, unless the county council expressly provides otherwise, "[i]f a provision is held invalid or inapplicable, the remainder of the code or the law remains in effect"). Nevertheless, such a provision " 'is an aid merely, not an inexorable command.' "

*Anne Arundel County v. Moushabek,* 269 Md. 419, 428, 306 A.2d 517 (1973) (quoting *Sanza v. Board of Censors,* 245 Md. 319, 338, 226 A.2d 317 (1967)).

 The provision that the Court held invalid in *McCrory* was not "inseparably connected in substance" to the remainder of the ordinance. *Mayor of Baltimore v. O'Conor,* 147 Md. 639, 654, 128 A. 759 (1925); *see also Sugarloaf,* 319 Md. at 576, 573 A.2d 1325. Nor did the invalidation of County Code § 27–20 render the remainder of the ordinance "impractical and useless without the invalid portions." *Heubeck v. Mayor of Baltimore,* 205 Md. 203, 212, 107 A.2d 99 (1954); *see also Sugarloaf,* 319 Md. at 576, 573 A.2d 1325. Moreover, if the Montgomery County Council had been informed that § 27–20(a) was invalid, we believe that it would have proceeded to adopt the remainder of the ordinance. Accordingly, we conclude that § 27–20(a) is severable. Therefore, we need not consider appellant's argument that Chapter 27, which was reenacted in 1994, cannot be applied retroactively to conduct or events that occurred in 1990.

## E. Local Laws

Next, we consider appellant's various challenges to specific provisions of Chapter 27 on the grounds that they are not local laws.

*Definition of Employer*

Appellant asserts that the ordinance is not a local law because it is not limited in geographic scope to Montgomery County. Specifically, BEI challenges County Code § 27–18(b), which provides:

> *Employer* includes any person, whenever [sic] situated, who employs more than six (6) employees within the county, either for compensation or on a volunteer basis, or who recruits individuals within the county to apply for employment within the county or elsewhere; the term shall include Montgomery County and its instrumentalities and agencies.

Appellant argues that the word "elsewhere" subjects employers outside of Montgomery County to liability for violations

that occur outside of Montgomery County, and thus is not a local law.

Appellant raised this issue below. On appeal, however, appellant only raised this issue in its reply brief. From our review of the record, it is apparent that appellees never responded to appellant's argument below, either in pleadings or at oral argument. Similarly, in denying appellant's motion for summary judgment and in granting summary judgment for appellees, the trial court did not address appellant's challenge that the statute, on its face, was invalid because it was not limited in scope to Montgomery County.

■■■ Whenever possible, we construe an ordinance to avoid a constitutional conflict. *Tidewater/Havre de Grace, Inc. v. Mayor of Havre de Grace,* 337 Md. 338, 352, 653 A.2d 468 (1995); *Burns v. Mayor of Midland,* 247 Md. 548, 554, 234 A.2d 162 (1967); *Gunpowder,* 108 Md.App. at 618, 673 A.2d 721. Moreover, we look at the challenged provision in light of the entire statutory scheme and the purpose behind each section. *Howard Research & Dev. Corp. v. Concerned Citizens,* 297 Md. 357, 364, 466 A.2d 31 (1983); *Gunpowder,* 108 Md.App. at 617, 673 A.2d 721.

County Code § 27–19(a) provides, *inter alia:*

It shall be an unlawful employment practice to do any of the following acts because of the race, color, religious creed, ancestry, national origin, age, sex, marital status, handicap, or sexual orientation of any individual or because of any reason that would not have been asserted but for the race, color, religious creed, ancestry, national origin, age, sex, marital status, handicap, or sexual orientation of the individual:

(1) For an employer:

 a. To fail or refuse to hire or fail to accept the services of or to discharge any individual or otherwise to discriminate against any individual with respect to compensation, terms, conditions or privileges of employment.

 Viewing the ordinance as a whole, we do not believe that the ordinance is facially unconstitutional. It is important to recognize that the definition of an "employer" in § 27–18(b) must be read in conjunction with the proscribed conduct in § 27–19(a). In harmonizing the two provisions, we believe that the phrase in § 27–18(b), "or who recruits individuals within the county to apply for employment within the county or elsewhere," read in conjunction with § 27–19(a)(1)(a), demonstrates that a person who, while engaged in recruiting in Montgomery County for positions inside or outside of Montgomery County, refuses to hire an applicant for discriminatory reasons, is liable under the ordinance. Unlike appellant, we do not read the provisions so broadly as to subject employers outside of the County to liability for violations that occur outside of the County. To the contrary, the discriminatory conduct must occur in Montgomery County. Therefore, the conduct that is proscribed is confined to the territorial limits of Montgomery County. Accordingly, County Code § 27–18(b) is a local law.

### Reemployment of Mangus

 Appellant argues that Montgomery County's anti-employment discrimination laws are not local laws because, to enforce the remedy sought by appellees—reinstatement at another radio station operated by BEI—appellees will have to reach beyond the borders of Montgomery County. This argument clearly attacks the ordinance as applied. Because it is not a facial challenge, appellant is required to exhaust its administrative remedies with respect to this contention. Therefore, we shall not consider it here.

### Remaining local law argument

In our view, appellant's remaining local law challenge to County Code §§ 27–17 to 27–26 is merely a general, conclusory contention that the provisions are not local laws. Appellant asserts:

Like § 27–20(a), all of §§ 27–17 through 27–26 of the Montgomery County Code affect "matters of significant

interest" and cannot qualify as "local laws" under Article XI–A of the Maryland Constitution. Employment discrimination is a statewide and national problem. Common sense dictates that employment discrimination is not a proper subject matter for "local laws," especially where, as here, the county seeks to order broad remedial measures outside the county, to award compensatory damages rather than administrative relief, and to make its orders enforceable in the state courts.

\* \* \* \*

Sections 27–17 through 27–26 of the Montgomery County Code are not "local laws" and are unconstitutional under the Maryland Constitution. Montgomery County did not have the constitutional authority to enact these ordinances, and certainly does not have the authority to enforce them, yet it persists in its efforts to do just that. Therefore, the Court should declare that these sections are invalid and Montgomery County should be permanently enjoined from proceeding against BEI in this matter.

■ In our view, appellant's remaining local law claim has not been argued with particularity. Therefore, we decline to consider it. Md. Rule 8–504; *see also Beck v. Mangels,* 100 Md.App. 144, 149, 640 A.2d 236 (1994), *cert. dismissed,* 337 Md. 580, 655 A.2d 370 (1995); *Federal Land Bank v. Esham,* 43 Md.App. 446, 457–58, 406 A.2d 928 (1979).

## F. Enforcement in Circuit Court

■ Appellant argues that County Code § 27–7(h), which permits the County to seek enforcement of Commission orders in the circuit court, creates a private cause of action where none exists. Appellant's argument is twofold: (1) *McCrory* prohibited the County from creating a private cause of action for employment discrimination, and (2) BEI's counsel is not aware of any authority permitting a County attorney to institute action in State court to enforce an order of the Commission.

Appellant's first argument is without merit because, as we stated in Part D, *supra*, *McCrory* invalidated County Code § 27–20, which permitted private parties to bring private civil actions in circuit court for unlimited money damages. *See also Beretta*, 122 Md.App. at 198, 712 A.2d 69. With regard to appellant's second argument, Art. 25A, § 5(S) authorizes the County Council "to pass all ordinances, resolutions or bylaws, not inconsistent with the provisions of this article or the laws of the State, as may be proper in executing and enforcing any of the powers enumerated in this section or elsewhere in this article, as well as such ordinances as may be deemed expedient in maintaining the peace, good government, health and welfare of the county."

Certainly, this broad grant of power encompasses the authority to provide for enforcement of Commission decisions and orders in the circuit court. *See, e.g., Levitz Furniture Corp. v. Prince George's County*, 72 Md.App. 103, 527 A.2d 813 (involving enforcement action and judicial review of county human relations commission order), *cert. denied*, 311 Md. 286, 533 A.2d 1308 (1987); *see also Dal Maso v. Board of County Comm'rs*, 182 Md. 200, 205, 34 A.2d 464 (1943) ("If [an administrative agency's] findings, resolutions, or orders are resisted or ignored, they must call on the courts to enforce them."). Therefore, we reject appellant's argument that the authority to enforce Commission orders in the circuit court creates an unconstitutional private cause of action.

## G. Preemption

Appellant also contends that several provisions of the County Code conflict with State law, and therefore are preempted. The specific arguments are as follows:

1. Montgomery County Code § 27–7(A), which provides that a complaint must be filed with the Commission within one year of the alleged discrimination, conflicts with Md.Code, Art. 49B § 9A(a), which requires filing of a complaint with the State Human Relations Commission within six months of the alleged discrimination.

2. Montgomery County Code § 27–7(e), which gives the Commission discretion to grant private hearings, conflicts with Md.Code, Art. 49B, § 11(a), which states that, once the chairman of the State Human Relations Commission issues a notice of complaint, the respondent is required to "answer the charges of the complaint at a public hearing before a hearing examiner. . . ." In addition, appellant asserts that County Code § 27–7(e) conflicts with the Open Meetings Act, Maryland Code (1984, 1995 Repl.Vol.), §§ 10–505, 10–506 of the State Government Article ("S.G.").[5]

3. County Code §§ 27–17 and 27–19, which prohibit discrimination based on sexual orientation, conflict with Md.Code, Art. 49B, § 16, which does not prohibit discrimination based on sexual orientation.

4. County Code § 27–7(f) conflicts with Maryland law because it places the burden of proof on the defendant.

5. County Code § 27–7(h), which provides that "any beneficiary of a panel order may institute judicial proceedings to enforce such order as it affects said beneficiary," conflicts with the Court's holding in *McCrory.*

6. County Code § 27–25, which authorizes compensatory damages and other relief, and § 27–7(k), which authorizes awards of attorneys' fees, damages to personal property, travel expenses, and compensatory damages for humiliation and embarrassment, conflict with Md.Code, Art. 25A, § 5, which does not authorize such damages or relief and limits counties to the imposition of fines and penalties not to exceed $5,000.00.

As a threshold matter, appellant has posited nothing more than conclusory assertions regarding issues 2 and 4. Thus, we shall not consider them. Md. Rule 8–504. In addition, we

---

**5.** For reasons that we shall explain *infra,* we shall not address the merits of appellant's asserted conflict. We observe, however, that the Open Meetings Act does not apply to adjudicatory hearings held by the Montgomery County Human Relations Commission. *See* S.G. §§ 10–502(i), 10–503(a)(1)(iii).

have resolved issue 5 in Part IV of our opinion. Thus, we are left to consider issues 1, 3, and 6.

■ Article XI–A, § 3 provides that, in the event of a conflict between a local law enacted by a charter county and a Public General Law of the State, the Public General Law "shall control." Therefore, when a local ordinance conflicts with a public general law enacted by the Legislature, the local law is preempted and thus invalid. *Coalition for Open Doors v. Annapolis Lodge No. 622,* 333 Md. 359, 379, 635 A.2d 412 (1994); *Investors Funding,* 270 Md. at 419–20, 312 A.2d 225; *Mayor of Baltimore v. Sitnick & Firey,* 254 Md. 303, 312–17, 255 A.2d 376 (1969). As the Court stated in *Talbot County v. Skipper,* 329 Md. 481, 620 A.2d 880 (1993):

A local ordinance is pre-empted by conflict when it prohibits an activity which is intended to be permitted by state law, or permits an activity which is intended to be prohibited by state law.

*Id.* at 487 n. 4, 620 A.2d 880; *see also Holiday Point,* 349 Md. at 210, 707 A.2d 829; *Annapolis Lodge,* 333 Md. at 380, 635 A.2d 412; *Allied Vending, Inc. v. City of Bowie,* 332 Md. 279, 297 n. 12, 631 A.2d 77 (1993); *County Comm'rs v. Soaring Vistas Properties, Inc.,* 121 Md.App. 140, 166, 708 A.2d 1066, *cert. granted,* 351 Md. 7, 715 A.2d 965 (1998); *May Dep't Stores v. Montgomery County,* 118 Md.App. 441, 462, 702 A.2d 988 (1997), *cert. granted,* 349 Md. 237, 707 A.2d 1330 (1998).

*Sitnick,* 254 Md. at 303, 255 A.2d 376, is instructive. There, the Court considered a challenge to a Baltimore City ordinance that established a minimum wage standard higher than that provided in the State law. In addition, the ordinance included within the scope of its provisions businesses that had been exempted under State law. Concluding that no conflict existed, the Court stated:

In none of the provisions of the ... City law does it authorize a minimum wage which is lower than that provided by the State law, nor does it exempt any employees included under the State law; we think this is the crucial

norm which must be used to measure the City law regarding any conflict with the statute.

*Id.* at 324–25, 255 A.2d 376. Thus, the Court determined that the local ordinance supplemented, but did not conflict, with State law, because it did not authorize a minimum wage below the floor established by State law. It stated that the "fact that an ordinance enlarges upon the provisions of a [state] statute by requiring more than the statute requires creates no conflict. . . ." *Id.* at 317, 255 A.2d 376 (internal quotations and emphasis omitted); *see also Beretta,* 122 Md.App. at 191–92, 712 A.2d 69 (discussing *Sitnick* ).

■■■ Appellant argues that County Code § 27–7(a), which requires that complaints be filed within one year, conflicts with State law, which requires the filing of a complaint within six months. County Code § 27–7(a) provides, in pertinent part: "Any complaint must be filed within one (1) year of the alleged discriminatory act or practice except those acts or practices which are continuing in nature." On the other hand, Art. 49B, § 9A of the State law provides:

> (a) Any person claiming to be aggrieved by an alleged discrimination prohibited by any section of this article may make, sign and file with the Human Relations Commission . . . a complaint in writing under oath. . . . A complaint must be filed within six months from the date of the occurrence alleged to be a violation of this article. A complaint filed with the federal or with a local human relations commission within six months from the date of occurrence shall be deemed to have complied with the provisions of this section.

We perceive no conflict. To be sure, a complaint made under State law must be filed with a federal or local commission within six months, in accordance with the last sentence of Art. 49, § 9A. The last sentence indicates the Legislature's recognition that filing deadlines under local or federal law may differ from State law. Although filing with a local human relations commission after six months would preclude a complainant from later seeking a State Human Relations Commis-

sion investigation, this does not preclude a local commission from pursuing a discrimination claim.

■ Appellant also contends that County Code §§ 27–17 and 27–19, which prohibit discrimination on the basis of sexual orientation, conflict with State law, which has no such prohibition. Maryland Code, Art. 49B, § 16 lists those bases for which employment discrimination is prohibited; it does not expressly address sexual orientation. Although discrimination on the basis of sexual orientation is not specifically covered by State law, this surely does not mean that such discrimination is permitted. Therefore, County Code §§ 27–17 and 27–19, which prohibit employment discrimination on the basis of sexual orientation, supplement State law, but do not conflict with it.

> What the Court said in *Annapolis Lodge* is pertinent here: [O]ur cases have recognized a distinction between a state law which is intended to permit or authorize a particular matter and a state law which is simply intended to exempt the particular matter from its coverage. When a state law simply excludes a particular activity from its coverage, our cases have not attributed to the General Assembly an intent to preempt local legislation regulating or prohibiting that activity. Instead, in such situations supplementary local legislation has not been deemed to be in conflict with and preempted by the state statute.

*Annapolis Lodge*, 333 Md. at 380, 635 A.2d 412; *see Sitnick*, 254 Md. at 324–25, 255 A.2d 376.

Next, we consider whether County Code §§ 27–7(k) and 27–25, which authorize the Commission to order damages and other compensatory relief, conflict with State law.

County Code § 27–25 provides:

> Upon a finding by the commission panel that there has been a violation of this division, it may order, in its discretion, and if appropriate, the hiring, reinstatement or upgrading of employees, with or without back pay; . . . . The commission panel may also order such other affirmative or

prospective relief as, in the judgment of the panel, effectuates the purposes of this division or is necessary to eliminate the effects of the discriminatory practice. The Commission may ... also make the following monetary awards determined by the commission panel from the evidence of record as the actual damages, costs or losses involved or in such amounts as may be specified below:

(a) The complainant may be awarded damages not exceeding all income that would have been received from an employer or any other source of income, whether or not that employer or source of income is a respondent hereunder.... This category shall also include the monetary equivalent of all sick leave, annual leave, retirement benefits ... lost during the period of violation; provided, however, back pay liability shall not accrue from a date more than two (2) years prior to the filing of a charge with the commission. Interim earnings, unemployment compensation and/or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable.

\* \* \* \*

(c) The payment of those awards provided in section 27–7 of this article.

County Code § 27–7 provides, in pertinent part:

(k) *Other commission panel awards and remedies.* In addition to the other awards and relief which are hereinafter provided, the commission panel may ... also make the following monetary orders determined by the commission panel from the evidence of record as the actual damages, costs or losses involved or in such amounts as may be specified below:

(1) The complainant may be awarded reasonable attorney's fees....

\* \* \* \*

(4) Damages may also be awarded to compensate complainant or respondent for humiliation and embarrassment suffered in an amount determined by the commission panel to be appropriately and reasonably warranted considering all of the circumstances, but in no event shall the amount be in excess of one thousand dollars ($1,000.00).

Under State law, the relief available to a complainant for employment discrimination is governed by Md.Code (1957, 1994 Repl.Vol.), Art. 49B, § 11(e), and common law. *See Molesworth v. Brandon,* 341 Md. 621, 636–37, 672 A.2d 608 (1996) (recognizing common law action for wrongful discharge based on gender discrimination if statutory remedy is not otherwise applicable). The current Maryland statutory provision states:

If the respondent is found to have engaged in or to be engaging in an unlawful employment practice charged in the complaint, the remedy may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief that is deemed appropriate. *The award of monetary relief shall be limited to a 36–month period.* The complainant may not be awarded monetary relief for losses incurred between the time of the Commission's final determination and the final determination by the circuit court or higher appellate court, as the case may be. Interim earning or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the monetary relief otherwise allowable.

Md.Code, Art. 49B, § 11(e) (emphasis added).

In *Beretta,* 122 Md.App. at 168, 712 A.2d 69, we recently addressed an identical challenge to the damages provision provided in the Prince George's County anti-discrimination ordinance. In that case, we reviewed the history of Art. 49B,

§ 11(e), and held that the Prince George's County Code provision that authorized that county's human relations commission to award damages for humiliation and embarrassment conflicted with State law. *Beretta,* 122 Md.App. at 196, 712 A.2d 69. While we acknowledged that the Legislature has authorized civil actions at law to recover damages, attorney's fees, expert witness fees, and costs, we made clear that the monetary relief available at the administrative level is limited to back pay. *Id.* at 196–97, 712 A.2d 69; *see* Md.Code, Art. 49B, § 42.

Accordingly, we hold that, to the extent that County Code, §§ 27–7 and 27–25 authorize the Commission to award monetary relief in addition to back pay, they conflict with State law and are thus invalid. *See Beretta,* 122 Md.App. at 196–97, 712 A.2d 69. In a civil action at law, an employment discrimination complainant may recover damages beyond back pay, as well as attorney's fees, expert witness fees, and costs. Such relief is not available at the administrative level, however. *Id.; cf. Holiday Universal,* 67 Md.App. at 568, 508 A.2d 991 (upholding Montgomery County Public Accommodation ordinance that authorized Commission to grant monetary awards).

### H. Ripeness

Appellant claims that it should not be required to defend against a six-year-old enforcement action involving an unconstitutional statute. Appellant thus contends that the trial court erred when it determined that BEI's federal challenges were not ripe. It asserts: "Montgomery County's attempt to enforce Chapter 27 of the County Code against BEI violates both the due process and equal protection clauses of the United States Constitution in so many ways that it is difficult to concisely discuss them within the briefing limits of the Rules of Appellate Procedure."

Nevertheless, appellant only argues two discrete points. First, appellant asserts that County Code § 27–19(d)(4), which permits discrimination based on sexual orientation under cer-

tain circumstances, does not satisfy the rational basis test.[6] Second, appellant posits that the Commission violated BEI's due process rights by filing the complaint in this case six years after the alleged act of discrimination occurred.

■■■■ Ripeness " 'requir[es] us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.' " *Texas v. United States,* 523 U.S. 296, ——, 118 S.Ct. 1257, 1260, 140 L.Ed.2d 406 (1998) (alteration in original) (quoting *Abbott Lab. v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). We note that some courts do not consider the second prong of the ripeness test when the issues presented are purely questions of law that are not dependent upon development of the facts. In *Eagle–Picher Indus. v. United States Envtl. Protection Agency,* 759 F.2d 905, 918 (D.C.Cir.1985), the Court said: "Where the first prong of the ripeness test is met and Congress has emphatically declared a preference for immediate review, assuming that constitutional case or controversy requirements have been met, no purpose is served by proceeding to the second prong." *See also American Petroleum Inst. v. United States Envtl. Protection Agency,* 906 F.2d 729, 739 n. 13 (D.C.Cir.1990) (per curiam) ("We reach the issue of hardship, however, only if the fitness of the issue for judicial resolution is in doubt."). A court may, however, defer consideration of an issue if the court believes that either it or the agency will benefit from deferring review until the " 'question arises in some more concrete and final form.' " *Eagle–Picher,* 759 F.2d at 915 (quoting *Continental Air Lines Inc. v. Civil Aeronautics Bd.,* 522 F.2d 107, 125 (D.C.Cir.1974)).

■■■ Closely associated with the ripeness doctrine in cases such as this is exhaustion of administrative remedies. *See Maryland Reclamation,* 342 Md. at 502–06, 677 A.2d 567; *Ticor Title Ins. Co. v. Federal Trade Comm'n,* 814 F.2d 731,

---

**6.** We note that the provision that BEI relies upon as the basis for its challenge was repealed in 1994. *See* Laws of Montgomery County, chap. 11(194).

734–35 (D.C.Cir.1987) (observing that exhaustion and ripeness are complementary doctrines that overlap); *see generally,* 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3532.6 (1984, Supp.1998); *see also, e.g., Rogers v. Bennett,* 873 F.2d 1387, 1392 (11th Cir. 1989) ("Until the appellants exhaust their administrative remedies, thereby allowing the agency officially to formulate its approach to the relevant regulations, we believe that the issues presented by this action will not be ripe for adjudication."). Exhaustion of administrative remedies is generally inapplicable to § 1983 claims challenging state or local laws in state court. *Felder v. Casey,* 487 U.S. 131, 146–47, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988); *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *Maryland Reclamation,* 342 Md. at 492, 677 A.2d 567; *Crawford,* 307 Md. at 12–14, 511 A.2d 1079; *cf. Hindes v. Federal Dep. Ins. Corp.,* 137 F.3d 148, 168–69 (3d Cir.1998) (indicating that *Felder* and *Patsy* were limited to the "notion that state laws or requirements which are inconsistent with federal law or its objectives are subordinated to the federal law by virtue of the Supremacy Clause"); *Boughton Trucking & Materials, Inc. v. County of Will,* 229 Ill.App.3d 576, 171 Ill.Dec. 299, 593 N.E.2d 1119, 1121 (1992) (holding that exhaustion is required when basis of § 1983 action is an allegedly unfair property assessment).

A common element of both exhaustion and ripeness is "finality." As we stated in *Maryland Commission on Human Relations v. Downey Communications, Inc.,* 110 Md.App. 493, 678 A.2d 55 (1996): "The 'exhaustion' and 'finality' requirements both share the common goal of preventing potentially unnecessary and premature disruption by the courts of the activities of administrative agencies." *Id.* at 528, 678 A.2d 55. Similarly, in *Maryland Reclamation,* the Court relied on the Supreme Court's distinction between ripeness and exhaustion in *Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), which focused on the concept of finality:

"Respondent asserts that it should not be required to seek variances from the regulations because its suit is predicated upon 42 U.S.C. § 1983, and there is no requirement that a plaintiff exhaust administrative remedies before bringing a § 1983 action. The question whether administrative remedies must be exhausted is conceptually distinct, however, from the question whether an administrative action must be final before it is judicially reviewable.... While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate. *Patsy* concerned the latter, not the former."

*Maryland Reclamation,* 342 Md. at 503–04, 677 A.2d 567 (alteration in original) (citations omitted) (quoting *Williamson,* 473 U.S. at 192–93, 105 S.Ct. 3108).

Similarly, the *Ticor* court stated:

The exhaustion doctrine emphasizes the position of the party seeking review; in essence, it asks whether he may be attempting to short circuit the administrative process or whether he has been reasonably diligent in protecting his own interests. Ripeness, by contrast, is concerned primarily with the institutional relationships between courts and agencies, and the competence of the courts to resolve disputes without further administrative refinement of the issues.

*Ticor,* 814 F.2d at 735 (quoting E. Gellhorn & B. Boyer, *Administrative Law and Process* 319 (1981)).

BEI has not satisfied the first element of ripeness. Among the issues noted by the trial court is appellant's contention that its personnel records were destroyed by fire. In a letter to appellant's counsel dated September 27, 1994, the Commission's investigator indicated that much of the agency's evi-

dence was based on witness statements, because all of the documentation concerning Mangus's job performance was destroyed in the fire. Thus, further development of the factual issues is necessary to determine whether the delay in filing the complaint against BEI constitutes a violation of its due process rights.

We also do not believe that appellant has demonstrated sufficient hardship in adjudicating this matter before the Commission. Appellant's claim that County Code § 27–19(d)(4) violates BEI's equal protection rights is a legal issue. Although appellant asserts hardship in having to defend this action, the cost of defending oneself in an allegedly unconstitutional administrative proceeding is generally not a sufficient hardship to interrupt the agency's proceedings. *Ticor,* 814 F.2d at 752 (Green, J. concurring) ("Indeed, if the expense of such a defense were sufficient to satisfy the second prong of the ripeness test, that half of the test would be rendered superfluous in all cases involving challenges to ongoing administrative proceedings, since there are ... always costs associated with participating in such proceedings."); *see also Federal Trade Comm'n v. Standard Oil Co.,* 449 U.S. 232, 244, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980) (" '[T]he expense and annoyance of litigation is "part of the social burden of living under government." ' " (quoting *Petroleum Exploration, Inc. v. Public Serv. Comm'n,* 304 U.S. 209, 222, 58 S.Ct. 834, 82 L.Ed. 1294 (1938) (quoting *Bradley Lumber Co. v. National Labor Relations Board,* 84 F.2d 97, 100 (5th Cir.), *cert. denied,* 299 U.S. 559, 57 S.Ct. 21, 81 L.Ed. 411 (1936)))). Further, appellant concedes that, upon selling WNTR in January 1993, "BEI conducted no further business and owned no assets in Maryland thereafter." Thus, apart from the case at issue here, there is no threat of any other enforcement of the ordinance against BEI.

To be sure, we are concerned with the lengthy delay in investigating this case and certifying it for public hearing. Nevertheless, we agree with the trial court that any prejudice to BEI resulting from the delay may well constitute a defense at the administrative level; appellant can raise its constitu-

tional arguments there. *See Equitable Life,* 339 Md. at 615–19, 664 A.2d 862 (explaining that administrative officials can decide constitutional issues, even though they have no authority to "declare" a statute unconstitutional). Because the agency can consider constitutional issues, the court would actually benefit from deferring resolution of the federal issues until the matter is adjudicated at the agency level and reaches the court with a more developed record.

Moreover, appellant may yet prevail on the merits. Even if the agency resolves the case against appellant, however, the Commission does not have authority to enforce the agency's decision or order. To do so, the agency must bring an enforcement action in the circuit court, at which time the agency's decision is subject to judicial review. *Department of Natural Resources v. Linchester Sand & Gravel Corp.,* 274 Md. 211, 222–23, 334 A.2d 514 (1975); *Dal Maso,* 182 Md. at 205, 34 A.2d 464. In any event, if BEI is unsuccessful before the agency, it could pursue judicial review in the circuit court, pursuant to Montgomery County Code § 27–7(g).

In reaching our conclusion regarding ripeness, we consider the case of *Syndicated Publications, Inc. v. Montgomery County,* 921 F.Supp. 1442 (D.Md.1996), as instructive. There, the court held that a declaratory action challenging Montgomery County's deceptive trade practices ordinance was ripe for review. Following complaints from local businesses, an investigator for the County's Office of Consumer Affairs ("OCA") concluded that the publisher's solicitations violated the ordinance. *Id.* at 1445. The investigator then asked the publisher to enter into a cease and desist order, requiring the publisher to discontinue mailing the solicitations. In rejecting the County's argument that the matter was not ripe, the federal court observed that the OCA made a "final" decision when it concluded that the solicitations were "inherently misleading" and asked the publisher to enter into a cease and desist agreement. *Id.* at 1446.

In contrast to *Syndicated Publications,* however, there is no "final" decision that BEI has violated the County Code. In-

stead, the Commission has merely concluded that reasonable grounds exist to believe that BEI has done so. Moreover, there is nothing enforceable against BEI at this stage of the administrative process. Unlike the publisher in *Syndicated Publications,* BEI has not been asked to enter into a cease and desist agreement, nor has BEI presented any hardship or prejudice with respect to participating in the administrative hearing, other than preparing its case.

As we see it, this case is similar to *Bell Atlantic Cash Balance Plan v. United States Equal Employment Opportunity Commission,* 976 F.Supp. 376 (E.D.Va.1997). There, Bell Atlantic filed a declaratory judgment action after the EEOC issued a reasonable cause determination of discrimination. The federal court held that the action was not ripe, stating:

[I]t is pellucidly clear that the EEOC's determination letters are not final orders because they impose no legal liability or obligations on Bell Atlantic. In fact, before any legal liability can be imposed on Bell Atlantic under Title VII, the EEOC or the aggrieved employee must file an enforcement suit in district court. Until an enforcement suit is brought, Bell Atlantic cannot be compelled to change its employment practices, to provide remedies for discrimination, to disclose documents to the EEOC, or to pay monetary penalties for noncompliance with Title VII. While an investigation by the EEOC may reasonably cause a company like Bell Atlantic to incur some burdens during the course of that investigation, such burdens are not indicia of final or reviewable agency action; they do not amount to the type of concrete, significant hardship that triggers judicial review. Hence, because the EEOC's issuance of two determination letters creates no legal liabilities or obligations, this cannot be considered final agency action under these circumstances.

*Id.* at 380–81 (citations and footnotes omitted).

Similarly, we believe that the Commission's decision that reasonable grounds exist to believe that BEI violated the County Code is not "final," and thus not ripe for review.

What we said in *Downey,* albeit in a slightly different context, is pertinent here:

> The administrative process would come to a standstill if parties that are the subject of agency investigations could file parallel lawsuits seeking to adjudicate an issue that is before the agency. As a matter of administrative law, and as a matter of equity, a government agency needs to be able to do its work. There would scarcely be a purpose for an agency, such as the [State Human Relations] Commission, if a party involved in a proceeding before the agency could make an "end run" around it by obtaining judicial adjudication of the same issues that are then pending before the agency. Indeed, such a lawsuit may have the purpose or effect of avoiding or obstructing the agency's pending investigation or adjudication.

*Downey,* 110 Md.App. at 525–26, 678 A.2d 55. Therefore, we hold that the trial court correctly concluded that appellant's federal claims are not ripe.

**JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY WITH INSTRUCTIONS TO ENTER JUDGMENT IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID 90% BY APPELLANT AND 10% BY APPELLEES.**